214    485
f214    495

# Dunham *v*. McMichael, Appellant.

*Evidence—Declarations—Telephone—Identification of person speaking over telephone.*

In an action by a wife against another woman for the alienation of the affections of plaintiff's husband, plaintiff sought to prove declarations of the defendant made to herself over the telephone. Plaintiff called her young son to testify that the phone hung in a bathroom where he could hear everything that was said while his mother held the receiver. He testified that he heard the defendant announce her name and start an angry conversation. On cross-examination he admitted that he did not know the defendant, had never seen her, and had never heard her voice before, unless it was she who had earlier in the same day attempted to call up the plaintiff on the 'phone. The evidence was ruled out. Defendant was then called on cross-examination, and was asked whether she had called up the plaintiff on the day designated by the boy. She admitted one conversation with the plaintiff over the 'phone, but asserted her inability to fix the date when it occurred, hour, day or month. She also admitted that the conversation was an angry one. The boy was subsequently recalled, and permitted to testify as to the alleged statements of defendant over the 'phone. *Held*, that the defendant's voice was not sufficiently identified, and that it was error to permit the boy to testify as to what he heard.

Testimony may be rejected which appears to be founded on data so scanty that the witness's alleged inferences from them may be pronounced either absurd or extreme.

*Husband and wife—Alienation of husband's affections—Damages—Evidence.*

In an action by a wife against another woman to recover damages for the alienation of her husband's affections, where the plaintiff shows as the basis of damage the probable annual expenditure required for the support of plaintiff's family in the style in which they had been living before the cause of action arose, the defendant may show that the plaintiff had an income of her own which had been applied towards the costs of the family's living, and that the actual loss of support was the difference between the total and the plaintiff's contribution.

*Evidence—Harmless error—Reversal.*

The admission of evidence manifestly harmless is no ground for reversal, even if it be erroneous to admit it.

Argued Jan. 31, 1906. Appeal, No. 325, Jan. T., 1905, by defendant, from judgment of C. P. Montgomery Co., Oct. Term, 1904, No. 108, on verdict for plaintiff in case of Catharine B. T. Dunham *v*. E. Winnie McMichael. Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER and STEWART, JJ. Reversed.

Trespass to recover damages for the alleged alienation of the affections of plaintiff's husband. Before WEAND, J.

At the trial H. Bellinger Dunham, the son of plaintiff, about eleven years old, was called and questioned as follows :

"Q. Do you remember the 6th of July, 1904? A. I do. Q. After the day you had returned from Atlantic City? A. I think I do. Q. What took place then? A. That girl down there called mother up on the 'phone, and when mother said—"

Objected to by defendant.

"Q. Did you hear her voice? A. I did. Q. Do you know her voice? A. I know her voice, and she said who it was. Q. You heard her say who it was? A. Yes."

Mr. Evans : We would like to cross-examine first to see if he did know the voice. The simple fact of somebody making a declaration in the absence would not be evidence.

The Court : They have a right to see if he knew the voice.

Cross-examination by Mr. Evans : " Q. You say you heard her voice? A. Yes, sir. Q. What girl was it? A. It was Winnie McMichael. My mother asked her who it was, and she said Miss McMichael. Q. Just answer my question. Had you heard her voice before that time? A. I had. Q. Had you ever met her? A. No. Q. You had never met her? A. I had never seen her before. Q. How then could you know her voice? A. She called up in the morning."

Objected to by defendant.

The Court : " Q. Who had an ear to the 'phone? A. My mother had an ear to the 'phone and mine was right by. Q. You heard everything that was said? A. Yes, until she sent me out of the room. Q. How could you hear? How close were you to her? A. I was right up by it, and our 'phone is in the bathroom, and if you shut the door you can hear everything a person says. If they yell you can hear still better, and she was mad and she yelled. Q. She was mad, was she? A. Yes, she was mad. Q. You are sure you heard distinctly everything? A. Yes, I heard very distinctly. Q. How was it the person who sent the message over the 'phone announced the name? A. She said ' Hello.' My mother said ' Hello, who is it?' She said, ' Miss McMichael.' Q. Your mother asked who it was? A. Yes. Q. And then the answer came? A. Yes."

The Court: I will admit it for the present. My impression is it is a very doubtful case, but you have a witness here who can be called upon the stand to deny she sent the message. Otherwise I would certainly rule it out. I think you might accept my offer to get the witness on the stand, but if you still object, I will adhere to my first ruling. It cannot be possible that if I would telephone to Philadelphia to Drexels' to buy 100 shares of stock, and they asked me who it was, and I should say Mr. Larzelere, that they should hold him responsible for it. He would not be required to deny it. They would have to prove it was the person. In this case the boy said he never heard the voice of the lady before, and whatever knowledge he had came over the 'phone. I therefore sustain the objection, and rule out the evidence.

E. Winnie McMichael, sworn, called for cross-examination.

Mr. Larzelere: "Q. Do you recall July 8, 1904? A. I think I do. Q. Did you call up Mrs. Dunham on her telephone? I do not ask you what took place. I merely want to know whether you called her up? A. I think I did; I am not quite sure. Q. Are you not sure? A. I am not quite sure whether Mrs. Dunham called me or I called her. Q. But anyhow, you had a conversation with her over the 'phone? A. I am not sure whether it was on the 8th of July. I have had a conversation with Mrs. Dunham over the telephone. Q. About that time, was it? A. I could not say. Q. I do not want you to give the conversation, but I just want to fix the time. Was part of the conversation in reference to anything that you said about having been to her minister's? Was that the conversation? · I do not ask what it was, but just to refer you to the time? A. I think the conversation that we had, that Mrs. Dunham and I had, that I said I would go to Mrs. Dunham's minister. Q. And it was also in reference to what had taken place (I do not ask you what it was, just to refer you to it) between you and her husband on New Year's day at his office? Wasn't that part of the conversation, too? A. No, I do not think so. Q. You do not think so? A. No. Q. Didn't you have any conversation like that over the telephone? A. About what took place in the office? Q. Yes. A. No, I do not think so. Q. Didn't you have a conversation over the fact of her husband—wasn't that part of the conversation? A. No,

I do not think it was. I think it was about Mrs. Dunham
coming to my mother, the conversation was. My mother had
been very ill over it. Q. Was it July 8? A. I could not
say. Q. When was it, then? A. I do not keep any dates.
I could not tell just exactly when it was. I remember hav-
ing a conversation with Mrs. Dunham over the telephone.
Q. What time in the day was it? At three o'clock in the
afternoon, wasn't it, about three o'clock in the afternoon?
A. It may have been. I do not know. I am not positive of
the time. Q. You had a conversation with her? A. I had a
conversation with Mrs. Dunham over the telephone, yes.
Q. About July 8? A. I could not say just when it was. I
do not know. It was in the year, I suppose, of—it was in the
last year, 1905, yes. Q. No, not 1905. 1905? A. 1904;
yes, 1904. Q. It was in July, wasn't it? A. I do not know
the month. Q. You had the conversation? A. I had the
conversation with Mrs. Dunham over the telephone, yes."

Mr. Evans: " Q. You have testified in answer to Mr. Lar-
zelere's questions that you were in telephone communication
with Mrs. Dunham some time in 1904. Will you state a little
more fully what the telephone' message or conversation was
about? A. I could not exactly state just what it was about.
I remember Mrs. Dunham and I had a sort of a quarrel. She
called me some very vile names, and said I was nothing but
an Irish Catholic, and that all I deserved was to come and
work in her kitchen; if I would come out she would give me
a job; and I said I did not mind working for a white person,
but I would not work for a nigger or an Indian. That is just
what I said."

H. Bellinger Dunham, recalled.

Mr. Larzelere : If the court please, under the admission of
the defendant that she was at the telephone, I wish to give
the conversation that took place over the telephone.

Mr. Evans: We object to it, because the identification of
the time and place was too indefinite.

Objection overruled. Defendant excepts. Bill sealed.
[2, 3]

Mr. Larzelere : " Q. Do you remember a telephone commu·
nication to your Mama over the 'phone ? A. Yes. Q. When
was that? A. July 8. Q. What year was it? A. 1904.

Q. What time in the afternoon was it? A. It was about around three o'clock, about half-past three. Q. Did you hear the conversation? A. Yes. Q. Will you just tell what you heard pass over the 'phone between your mother and Miss Mc-Michael? A. My mother said, 'Hello.' Then Winnie Mc-Michael said, 'Hello.' And my mother said, 'Who is it?' And Winnie McMichael said, 'Miss McMichael.' And Winnie McMichael was mad, because she yelled. She says, 'So you went to Atlantic City, did you?' My mother said, 'Yes, I went with my husband, not with a married man, like you went and stayed two days.' And then Winnie said—then my mother said, 'And you went to New York and stayed over-night.' Then Winnie said, 'You are only jealous,' and then Winnie said, 'Understand, I could have separated you in January, and I will do it yet.' Q. Then what happened to you? A. My mother told me to go out of the bathroom. Q. That is all that you heard? A. Yes. Q. The conversation was still going on, was it? A. Oh, yes! My mother talked for about fifteen minutes afterwards.

Joseph B. Thomas was asked this question:

"Q. Are you acquainted with the circumstances of Mr. Dunham and what they were at the time he abandoned his wife? A. Yes, sir."

Objected to as immaterial.

The Court: I suppose the object is to show he was abundantly able to support her in a certain way and that support has ceased. For the present the objection is overruled.

Defendant excepts. Bill sealed.

"Q. In what way do you know the means of the defendant on the 14th of August last year—I mean of Mr. Dunham? A. As trustee for him. Q. You are trustee of an estate from which he receives an income? A. An income of about $2,125 to $2,175, varying between those two points, a year, net income. Q. That he has without working for at all? A. Without working at all. Q. What was he engaged in up to that time? A. He was a broker, selling bonds and general investments, general securities. Q. Do you know at about what rate they were living in their circumstances out at their house? A. I know by statements his wife made in his presence, and he acquiesced in."

Objected to by defendant.

" Q. Aside from any statement made by him, from the general appearance of the way they lived, how much in your judgment did they spend? A. I should say fairly between $6,000 and $8,000. Q. A year? A. Yes, sir. Q. How many servants did they keep? A. On an average about three."

5. The court below erred in sustaining the objection to the testimony of Joseph B. Thomas. The question, objection and exception are as follows :

" Q. Your sister, Mrs. Dunham, has a separate estate of her own, has she not ? "

Objected to by plaintiff.

The Court : That would not make any difference. Objection sustained. Offer overruled.

Defendant excepts. Bill sealed. [5]

Verdict and judgment for plaintiff for $10,000. Defendant appealed.

*Errors assigned* were (2, 3, 5) rulings on evidence, quoting the bill of exceptions.

*M. J. O' Callaghan*, with him *Evans & Dettra*, for appellant. —A telephone conversation is inadmissible to establish admission of one of the parties where it appears that the witness was not acquainted with the party's voice, and could not identify it: Swing v. Walker, 27 Pa. Superior Ct. 366.

*N. H. Larzelere*, with him *T. Foster Thomas*, for appellee.— Weak identification of the speaker does not affect the admissibility of the evidence, but only its weight: Southwark Nat. Bank v. Smith, 7 Pa. Dist. Rep. 182 ; Wolfe v. Mo. Pac. Ry. Co., 97 Mo. 473 (11 S. W. Repr. 49) ; Globe Printing Co. v. Stahl, 23 Mo. App. 451 ; Miles v. Andrews, 153 Ill. 262 (38 N. E. Repr. 644).

OPINION BY MR. JUSTICE STEWART, March 19, 1906:

On the trial of the case, the witness, H. Bellinger Dunham, son of the plaintiff, a lad of about eleven years, called on behalf of plaintiff, was permitted to testify to a conversation carried on over the telephone between the plaintiff and another

representing himself or herself to be the defendant in the case. The effort was to prove by this witness declarations of defendant in the nature of admissions.    When it was first attempted to introduce this evidence, the witness had so far proceeded as to give the date of the occurrence, 8th day of July next preceding—a date first suggested by the examining counsel— to describe the conversation as an angry one, and to say that the person conversing with plaintiff was this defendant, because he knew her voice, and heard her say over the 'phone who she was.    Upon being inquired of by defendant's counsel, the witness admitted that he did not know the defendant, had never seen her, and had never heard her voice before, unless it was she who had earlier in the same day attempted to call up the plaintiff on the 'phone.    Under objection that the identification of defendant was insufficient, the witness was withdrawn. With a view to repeating the effort to prove the conversation, the defendant was called to testify as under cross-examination, and was asked whether she had called up the plaintiff over the 'phone on July 8, 1904.    She admitted one conversation with plaintiff over the 'phone, but asserted her inability to fix the date when it occurred, hour, day or month; and when asked whether the conversation did not relate to certain specific matters suggested by counsel, denied that it did so relate, and stated what the subject of the conversation was.    The learned trial judge being of opinion that defendant's admission sufficiently connected her with the conversation, admitted against objection the witness to testify to the details of the conversation.    This ruling is the subject of the second assignment of error.

It is first of all to be observed that the identifying circumstances relied on, are to be found exclusively in the defendant's testimony; there are none in the testimony of the witness by whom it was proposed to prove the conversation, and no other witness refers to the occurrence even remotely.    Again, it is to be remembered that in passing upon the question of identification, the testimony of the witness Dunham, when called to the stand the second time, was not a subject of consideration. It was not a question how far that fitted in with the statements made by defendant when under cross-examination; the real question was as to the admissibility of this particular evidence,

and this was to be met and passed upon with the offer of the evidence, and in the light of what had preceded. Defendant had the right to have it excluded at that point in the trial, if then the evidence was not sufficient to carry it to the jury. The determining question was,—did the admissions contained in the defendant's testimony so far supplement the testimony of Dunham when first called to the stand, as to make his later testimony, with respect to the conversation he heard, admissible? It was just as though the offer had been to show what Dunham first testified to, to be followed by certain specified admissions of the defendant. And in this inquiry it is important to remember that while defendant was called as an adverse party, she was called only for the purpose of establishing affirmatively the necessary supplemental facts. She was under no burden to acquit herself of or disprove in any degree the conversation imputed to her. No unfavorable or prejudicial inferences are to be derived from any failure on her part to state facts and circumstances which would negative the claim made against her. It was not as though the conversation had been already testified to and she had taken the stand to contradict or explain it. Only so much of her testimony as was affirmative in support of plaintiff's contention could be considered. Her admissions were, first, that at one time or other during the year 1904 she had conversed with plaintiff over the 'phone; and, second, that the conversation was an angry one. The first could have no identifying significance except as it also was supplemented by evidence that could come only from the plaintiff herself, that she had but the one 'phone conversation with defendant during that year. To make the second an identifying circumstance, it was just as necessary that it should be supplemented in the same way. The inquiry was not narrowed appreciably by showing that the conversation was an angry one, for it is not to be supposed that any conversation between these parties would be pleasant and agreeable; to a reasonable certainty it would be animated and most likely vituperative on one side or the other, probably on both. Whether one or many, the same feeling and temper would be displayed. The fact that it was angry, as Dunham testified, is the only point of agreement between the two witnesses. That this circumstance would be entitled to significance greater

or less depending upon other facts in the case, we concede, but with no other support than the fact that a 'phone conversation had occurred some time within a year between the parties, we cannot agree that it was a sufficient identification to open the way for the admission of the evidence. It is no answer to say that this view of the matter imposes upon the plaintiff a burden she could not in the nature of things meet, that she was incompetent as a witness, and therefore it was out of her power to prove that she had had but one conversation with the defendant over the 'phone. Without here discussing the competency of the plaintiff as a witness, but for present purposes assuming her incompetency, it was a circumstance wholly aside from the immediate question before the court. Her disability might have been to her disadvantage of course in this particular case; but rules of evidence are not made to fit particular cases, and they are not to be relaxed to avoid an apparent hardship in any case. This sort of hardship is frequently encountered, but courts are powerless to relieve it. When the offer to show the conversation was first made, it was rejected because the identification was insufficient; it was admitted later only on the ground that defendant had admitted to a conversation; and yet an examination of the testimony of Dunham will show that the conversation she admitted was not at all that which Dunham testified to. It was a virtual denial on her part that she had had any such conversation as he spoke of, and being uncontradicted, instead of her testimony supporting the offer, the effect of it was just the opposite. True, the plaintiff was not bound by her answers, but this simply means that plaintiff was at liberty to contradict her if she could; no evidence was offered by way of contradiction, with the result the same evidence that established the fact of a conversation, established the other fact that defendant did not have the conversation that it was proposed to prove. We are of opinion that the objection to Dunham's testimony ought to have prevailed. It is a well-recognized rule of evidence, that testimony may be rejected which appears to be founded on data so scanty, that the witnesses' alleged inferences from them may be pronounced either absurd or extreme. The claim of the witness that he knew one of the parties of the conversation was the defendant is absurd on its face; the inference from all

the proved facts that defendant was one of the parties to it, would be too extreme to entitle it to acceptance. For the reasons we have given, this assignment of error must be sustained.

The plaintiff herself was called and sworn as a witnesses under objection that because of the peculiar character of the case she would be testifying against her husband. The sixth assignment relates to this ruling of the court. When a point was reached in the examination of the witness that introduced the witness's husband, an objection was interposed and sustained. What preceded was not only without significance, incapable of working prejudice to the defendant, but should be regarded as striken out, since plaintiff's counsel so requested and the request was not opposed by the other side. The record does not show that it was actually stricken out, and it does not appear that the jury was directed to disregard it; but it was so manifestly harmless that even if admissible, a question we are not called upon to decide, it would not of itself call for reversal.

The fifth assignment of error must be sustained. The plaintiff had shown as a basis of damage the probable annual expenditure required for the support of plaintiff's family, in the style in which they had been living, before the cause of action arose. This of course was admissible only on the theory that such expenditures had been met by the husband, whose support it was alleged had been withdrawn. It was proposed to show in reply that the plaintiff had an income of her own, that it had been applied toward the cost of the family's living, and that the actual loss of support was the difference between the total and the plaintiff's contribution. The evidence should have been admitted. The total cost of the living would certainly be an unfair measure of damages, if in point of fact, the plaintiff herself had contributed out of her own funds toward these expenses. The other assignments of error call for no comment. They are without merit and are overruled.

Judgment reversed and a venire facias de novo awarded.