## Hill *v.* Torpey, Appellant.

*Landlord and tenant—Lease—Term—Month to month—Year to year—Evidence.*

1. In an action by a landlord against a tenant for rent, where the issue is as to whether the term under the oral lease was to be from month to month or from year to year, and there is a direct conflict of testimony on the subject, the case is for the jury, and a verdict and judgment for the plaintiff will be sustained; and this is especially so where the circumstances of the tenant's business, and the terms of a written lease between other parties, but under which the tenant entered, indicate that is was not probable that he would have taken, or did take a lease from month to month.

*Practice, C. P.—Trial—Interrogation of witness by judge.*

2. It is not error on the part of a trial judge to develop testimony by his own examination which might have been brought out by questions propounded by the plaintiff's counsel. There is large discretion allowed to the trial judge in interrogating witnesses, and there is no warrant for the reversal of a judgment where the evidence solicited was entirely competent.

Argued Dec. 19, 1910.    Appeal, No. 68, Oct. T., 1910, by defendant, from judgment of C. P. No. 2, Phila. Co.,

Dec. T., 1908, No. 1,951, on verdict for plaintiff in case of William Hill v. John J. Torpey and James A. O'Connell, now or late trading as Marion Hosiery Mills, O'Connell & Torpey. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Assumpsit for twelve months' rent. Before SULZBERGER, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $900. Defendant appealed.

*Errors assigned* were (1) admission in evidence of lease to Buckhalter and O'Connell; (2) in the action of the judge in examining the defendant as to the nature and character of his business; (3–10) various instructions by which the judge submitted the case to the jury.

*E. P. Gallagher*, with him *Bayard S. Cook*, for appellant.

*James Wilson Bayard*, with him *John G. Johnson*, for appellee.

OPINION BY HENDERSON, J., March 3, 1911:

The plaintiff's action is for rent claimed to be due on an oral lease. The demise of the premises and the occupancy by the defendants is not denied. The dispute arises in regard to the length of the term, the plaintiff claiming that the tenancy was from year to year and the appellant that it was a letting by the month and that he was therefore authorized to surrender and abandon the premises at the end of any month on the payment of the rent, after thirty days' notice of his intention to leave. The assignments of error cover three propositions presented by the appellant, one of which goes to the foundation of the case and is a denial of the plaintiff's right to recover at all because of lack of evidence that the lease on which the plaintiff claims was from year to year. The second arises out

of an objection to the admission of a lease in evidence, and the third, to the action of the court in taking part in the examination of the defendant, O'Connell, when he was on the stand as a witness in his own behalf. The premises demised were rooms in two large buildings occupied by different tenants for manufacturing purposes. The appellant and one Buckhalter were in partnership in the manufacture of hosiery and carried on their factory in a part of the buildings in which are the rooms for which the plaintiff claims the rent. This partnership was dissolved in 1892 and a new partnership was formed between the defendants; the business was carried on in the rooms occupied by the former partnership and additional rooms were afterward taken as the business of the firm increased. The rent claimed is for two rooms last occupied. No lease in writing was signed after the new firm was organized but the plaintiff prepared leases running from May 1, 1906, which he presented to the appellant to be signed, and which he declined to sign, as the plaintiff tells it, because he and his partner were about to dissolve partnership. The plaintiff then waited about a year and went to see him again in regard to signing the leases when he again stated that they were going to dissolve and further: "I will sign no leases but you get your rent every month from year to year, May first. We are going to dissolve and we will make no more leases, but I shall remain here in your place. I shall buy the whole thing out and shall go on as usual from year to year from the month of May to start the lease." The appellant's statement in regard to this was that when the lease was presented he declined to sign it because under the lease when he and Buckhalter were in partnership the rent was $75.00 a month including all the power they needed and that in the leases submitted they wanted to limit the power. The witness stated it in these words: "I would not sign the leases on account of them limiting the power." The transaction by which the rooms were acquired by the defendants is stated by the plaintiff in this way: "Q. What arrangement did you make with

them about the rooms? Tell what they said and what you said. A. They wanted the rooms and took them and said then that they would make the leases due all on May 1. Q. How long were the leases to run? Was there anything about that? A. Three years with the privilege of from year to year." In the spring of 1906, the plaintiff says Mr. O'Connell came to him and asked him to "liberate him" on one of these rooms. His son and Mr. Torpey's son were carrying on business there and they were not making it pay and he would like the plaintiff to take the room back. This he refused to do but the plaintiff proposed to rent it for him to some one else to which the appellant replied "No, it's the best room in the place. We will keep it and make out all our payments the first of May." The plaintiff further states in the same connection "that was distinctly understood from year to year." At a later time the defendants concluded to dissolve their partnership and the plaintiff alleges that about April 27, 1908, the appellant came to him and stated that they had agreed to dissolve and that he would like the plaintiff to release the firm and take the rooms and advertise them as agent and that the firm would pay the cost of advertising; that when the rooms were rented the landlord was to give credit for the time and the firm would pay the rent. A written request containing part of this proposition was presented to the plaintiff at that time. He asked the appellant for an opportunity to submit it to his counsel for consideration; whereupon the attorney consulted prepared a paper to be signed by the defendants in which they asked the plaintiff to put up a sign; that they desired to vacate the premises; that they would pay the rent for all the rooms until a tenant could be procured for the two rooms which they wished to vacate and when a new tenant was found for the rooms so vacated the liability of the defendants was to cease for such rooms after the new term commenced. This paper was given to the defendants and afterward signed by them and returned to the plaintiff at which time one of the plaintiff's witnesses, Mrs.

Wilson, says the plaintiff stated to the appellant "Jim, you will pay rent until the rooms are rented," to which the appellant said "Certainly." Other evidence, too voluminous to be quoted, bearing on the same subject was introduced. Taking all of it into consideration there can be no doubt of the propriety of submitting to the jury the question whether the lease was from year to year or from month to month. The letter prepared by the plaintiff's counsel which was offered in evidence was sufficient with the fact of the original letting to take the case to the jury. And in this connection we may consider the appellant's second objection. The lease to Buckhalter and O'Connell was not between the identical parties to this litigation but it was evidence of the character of the term under which the appellant went into possession of the premises and under which he held part of the property leased. The fact that Buckhalter went out of the firm and Torpey came in did not relieve the appellant, who remained in possession with his machinery and with his manufacturing operations, from liability on the original lease. He never abandoned the premises and so far as appears in the case was not released from liability as a tenant. When we consider then that the business after Torpey came in was expanded to such an extent that it became necessary to take additional rooms to enable the defendants to successfully prosecute their business and when it is further considered that the goods which they manufactured were delivered on orders taken eight or nine months before the time of shipment the lease referred to was material evidence bearing on the inquiry whether the appellant being already in occupancy of part of the factory from year to year and carrying on a business of the kind described would take the additional rooms from month to month and install machinery therein when he was liable to be dispossessed at the end of any month by the landlord.

The examination of the defendant engaged in by the court was on a subject about which it was proper to inform the jury and the inquiries might have been made by

the counsel for the plaintiff. It was not error on the part of the court to develop the testimony by his own examination which might have been brought out by questions propounded by the plaintiff's counsel. There is large discretion allowed to the trial judge in interrogating witnesses and there is no warrant for the reversal of a judgment where the evidence elicited was entirely competent. The subject presented in the case was purely a question of fact which was submitted to the jury fairly and intelligibly and we think without error on the part of the trial judge.

The judgment is affirmed.