## Commonwealth of Pennsylvania *v.* McKeehan et al., Appellants.

*Criminal law—procedure—Indictment—Complaint—Merger—District Attorney—Power—Discretion of court—Trial—Examination of witnesses by court—Extent—Charge—Prejudice to defendant.*

In the trial of an indictment for receiving stolen goods a motion

to quash the indictment was made because the description of the stolen property (municipal bonds) did not conform to that in the complaints. There was no evidence that the defendants were placed at a disadvantage or their defense prejudiced by the misdescription, and the record further showed that the indictment was in the nature of a District Attorney's bill.

In such a case a motion to quash the indictment was properly refused.

Where the court granted leave to the district attorney to merge three complaints of conspiracy and receiving stolen goods in one indictment for receiving stolen goods, such action is within its authority and open to review and reversal only where the abuse of discretion complained of is evident and flagrant.

It is the undoubted right of the court to develop the actions and motives of the witnesses by examination, when deemed necessary for the better understanding of the case by the jury, if this be done within reasonable limits and without withdrawing the case from the uncontrolled consideration of the jury. In the interest of the proper administration of justice it may be the duty of the court to make clear the state of facts involved by appropriate questions.

A charge discussing the testimony of the defendant at length, but clearly submitting to the jury, the question of his guilt or innocence on the evidence, is not prejudicial merely because the weight of the evidence is heavily against the defendant.

Argued March 5, 1928. Appeals Nos. 39 and 40, February T., 1928, by defendants from judgment and sentence of Q. S., Luzerne County, No. 209, November Sessions, 1927, in the case of Commonwealth of Pennsylvania v. B. H. McKeehan, D. F. Mulligan and John J. Walsh. Before HENDERSON, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Affirmed.

Indictment for receiving stolen goods. Before JONES, J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty upon which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were refusal to quash the indictment and charge of the court.

*Thomas F. Farrell,* and with him *John H. Dando,* for appellants.

*Thomas Butkiewics,* Assistant District Attorney, and with him *Thomas M. Lewis,* District Attorney, for appellee.

OPINION BY HENDERSON, J., April 16, 1928:

Separate complaints were made before Hon. WILLIAM S. McLEAN, JR., of Luzerne County, charging the appellants and one Walsh with conspiracy to receive stolen property and with the receipt thereof. Walsh was acquitted at the trial and further consideration of the case as related to him is unnecessary. The appellants were held to bail by Judge McLEAN on the complaint, as to McKeehan, that he conspired with John Doe and others to defraud the Garfield National Bank, of New York, of municipal bonds of the value of $79,000, and that he knowingly received a lot of bonds of the value of $50,000, the property of the said bank, and, as to Mulligan, that he maliciously conspired with John Doe and others to defraud the First National Bank of Columbus, Wisconsin, out of a lot of Port of Portland bonds of the value of $1,000, and that he received said bonds, the property of said bank, knowing that the said bonds had been feloniously stolen. Owing to the evidence developed at the preliminary hearing, the court granted leave to the District Attorney to "merge and join" the three charges in one bill of indictment, it appearing that they arose out of transactions with which the three defendants were connected. The District Attorney thereupon presented an indictment to the Grand Jury charging the defendants with receiving one lot of municipal bonds issued by the City of Bridgeport, Conn., of the value of $50,000 the property of Garfield National Bank of New York, then lately before feloniously stolen, the said defendants well knowing that the said

bonds had been so stolen.    The Grand Jury having
returned a true bill, a motion to quash was filed in
behalf of the defendant Mulligan, on the ground that
a different offense was set forth in the indictment from
that charged in the complaint before the magistrate,
in that the property described in the complaint was
one lot of Port of Portland bonds of the value of
$1,000, the property of the First National Bank of
Columbus, Wis., whereas the indictment described
municipal bonds of the City of Bridgeport, Conn., the
property of Garfield National Bank of New York.
The refusal of the court to grant this motion is the
subject of the first and second assignments of error.
The authority of the court to permit the combining
of the charges against the three defendants in one
bill, we think cannot be seriously questioned.    They
were all charged in the complaints with conspiracy
to receive stolen bonds and with the receipt of the
same.    They were all involved in the handling and
disposal of the bonds described in the complaints.    The
charge of conspiracy might well have been included
in the indictment as it was in the complaints, but there
is no legal objection to the action of the District At-
torney in limiting the charge to the overt act con-
templated in the conspiracy.    If a single complaint
had been made against the three, a single indictment
would properly have followed the complaint and as
the criminal charge grew out of the various trans-
actions with which they were all connected, no preju-
dice resulted to the accused from the procedure
adopted by the District Attorney and the court.    A
perusal of the evidence makes it clear that the ap-
pellants were not injuriously affected by the plan acted
on by the District Attorney.    The names of the owners
and the character of the bonds as set forth in the com-
plaints were matters of description and could have
been amended during the trial, subject to the right
of the accused, if surprised, to a continuance of the

case, but it nowhere appears in the progress of the trial that either of the appellants was placed at a disadvantage by any misdescription. It clearly appears from the evidence that Mulligan received from McKeehan, and had in his possession for a time, several thousand dollars of the bonds and that he negotiated a Port of Portland bond. His defense was that he had no knowledge that the property had been stolen; that he had taken the Bridgeport bonds from the desk of McKeehan and kept them in his possession for some hours, but that he returned them to the place from which he had taken them; that a Port of Portland bond he negotiated for McKeehan with the understanding that a part of the proceeds was to be used in promotion of the campaign of a candidate for sheriff in the county, and that he was in entire ignorance of the defect in the title to the bonds when delivered to McKeehan by the man Harris from whom McKeehan claimed to have received them. This defense was fully presented and fairly submitted to the jury. The objection to the indictment cannot be sustained for another reason. The bill was prepared by the District Attorney and given to the Grand Jury with the authority of the court. If not sufficiently supported by complaint, it is in the nature of a District Attorney's bill and in view of the facts relating to the hypothecation in the community of stolen bonds of the value of many thousands of dollars, the right of the District Attorney to present a bill under the direction of the court is well established. It might also be held that public interest required prompt exercise of the authority of the District Attorney to obtain an indictment in view of the disclosures as to the volume of stolen property put in circulation in Wilkes-Barre and that community. The authority to act on such a state of facts is in the prosecuting officer of the Commonwealth subject to the supervision of the criminal court, the action of which would only be

open to review and reversal where abuse of the discretion complained of was evident and flagrant: Rowand v. Com., 82 Pa. 405; Com. v. Danner, 79 Pa. Superior Ct. 556.

It is further urged, as set forth in the third assignment, that the court's conduct in interrogating McKeehan, when on the stand as a witness in his own behalf, exceeded the court's lawful discretion and thereby prejudiced that defendant in the mind of the jurors. This examination covers about 5 pages of the 223 pages of testimony on the record and took place at the conclusion of the cross-examination of the defendant by the District Attorney. The witness had testified at considerable length in regard to his connection with the transactions involved in the case, the recital of which, in some respects, evidently seemed to the court not clear and not fully disclosing the conduct and motive of the defendant in his connection with the various persons with whom he had dealt in disposing of the bonds. The inquiries of the court were all pertinent and not objected to by the defendant or his counsel. It was not judicial conduct within the prohibition of Com. v. Myma, 278 Pa. 505, on which the appellant relied. The court there said: "Judges should refrain from extended examination of witnesses; they should not, during the trial, indicate an opinion on the merits, a doubt as to the witnesses's credibility, or do anything to indicate a leaning to one side or the other, *without explaining to the jury that all these matters are for them."* The case is not authority for the proposition that during the trial of a criminal case the court may not more fully develop the actions and motives of the witness than was done by the Commonwealth in the cross-examination. On the contrary, it is the undoubted right of the court to make such inquiries when deemed necessary for the better understanding of the case by the jury, if this be done within reasonable limits, and

without withdrawing the case from the uncontrolled consideration of the jury. In the interest of the proper administration of justice, it may be the duty of the court to make clear the state of facts involved by appropriate questions.

Assignments four to eleven inclusive criticize the charge as argumentative and so prejudicial to Mc-Keehan that it also "militated" against Mulligan. We have examined the subject of this complaint without finding sufficient support for the criticism. A considerable part of the charge was devoted to a discussion of the facts in the case and that discussion necessarily bore heavily on McKeehan, not because of the prejudice of the judge, but because of the weight of the evidence. The explanation given of that defendant's connection with the receiving and disposal of the more than $50,000 worth of stolen bonds was so improbable and was involved in so many complications that any proper reference to it necessarily exhibited its weakness. If that "militated" against Mulligan it was a result growing out of the latter's association with McKeehan and his concerted action with the latter in disposing of part of the stolen property. The jury could not be expected to listen to the dramatic story of the delivery and disposal of the bonds without being convinced that it was so improbable as to forbid credence. That the case was submitted to the jury clearly for the ascertainment of the guilt or innocence of the defendants on such evidence as was presented, and that the instruction of the court on the question of reasonable doubt and the weight of the reputation evidence was correct cannot be doubted. The case was left wholly to the jury on the evidence. After an examination of the record and a consideration of the arguments of the defendant's counsel, we are unconvinced that reversible error appears on the record.

The assignments are overruled and the judgments

are affirmed, and the record remitted to the court
below and it is ordered that the defendants appear
in the court below at such time as they may be there
called and that they be by that court committed until
they have complied with the sentence or any part of
it which had not been performed at the time the ap-
peal in this case was made a supersedeas.