Commonwealth *v.* Del Giorno, Appellant.

510

Argued March 23, 1931.   Before Frazer, C. J., Walling, Simpson, Kephart, Schaffer and Maxey, JJ.

*Edward W. Wells,* with him *Edward A. Kelly,* for appellant.—Statements made to a witness by a codefendant (not on trial) are not admissible against the defendant on trial.

Where an answer of a witness is unresponsive and prejudicial it is error to refuse to strike it out.

A hospital record is admissible to prove a codefendant was treated for gunshot wounds almost immediately after the alleged murder.

It is misleading to charge the jury that it should "deal *only* with that kind of murder in the first degree described as 'wilful, deliberate, and premeditated.'"

It is error to refuse to charge that the doctrine of a reasonable doubt applies to every element of the offense: Com. v. Green, 292 Pa. 579.

The charge was prejudicial in its criticism of the testimony for the defense: Com. v. Pipes, 158 Pa. 25; Com. v. Loomis, 267 Pa. 438; Com. v. Ronello, 251 Pa. 329.

The court below erred in interrupting examination of defendant and his witnesses and extensively examining the same: Com. v. Myma, 278 Pa. 505; Sarshik v. Fink, 292 Pa. 256.

The court below erred in refusing to withdraw a juror on account of remarks made by counsel for the Commonwealth in his summation before the jury: Com. v. Shoemaker, 240 Pa. 255; Com. v. Ronello, 251 Pa. 329.

The court below erred in refusing to withdraw a juror on account of remarks made by the court: Sarshik v. Fink, 292 Pa. 256; Com. v. Stallone, 281 Pa. 41.

*Vincent A. Carroll,* Assistant District Attorney, with him *John Monaghan,* District Attorney, for appellee.— The court did not err in admitting a telephone conversation between a witness (mother of decedent) and a codefendant jointly indicted with appellant and previously tried and convicted.

Where, on cross-examination, a witness gives answer to a question which would not be a proper question in direct examination, such answer can not be deemed prejudicial in law.

The hospital record, properly or improperly proven, is not admissible as evidence of the facts which it contains: Harkness v. Boro., 238 Pa. 546.

It is not misleading to charge the jury that it should "deal only in that kind of murder in the first degree described as wilful, deliberate and premeditated": Com. v. Bednorciki, 264 Pa. 124.

The court did charge that the doctrine of a responsible doubt applies to every element of the offense: Com. v. Faulknier, 89 Pa. Superior Ct. 454; Com. v. Green, 292 Pa. 579; Com. v. Boschino, 176 Pa. 103; Com. v. Aiello, 180 Pa. 597.

The charge did not criticize the testimony for the defense and consequently was not prejudicial to the defense: Com. v. Weber, 271 Pa. 330; McClain v. Com., 110 Pa. 263; Com. v. Orr, 138 Pa. 276; Com. v. Mc-Gowan, 189 Pa. 641; Com. v. Cunningham, 232 Pa. 609.

The court below did not err in interrupting examination of defendant and his witnesses and extensively examining the same: Com. v. Green, 294 Pa. 573.

No remarks were made by counsel for the Commonwealth that would warrant the withdrawal of a juror: Com. v. Del Vaccio, 299 Pa. 547.

In Pennsylvania, the law on this subject is definitely settled, and abundant decisions to the same effect are found: Com. v. Exler, 61 Pa. Superior Ct. 423; Com. v. Pennington, 249 Pa. 536; Com. v. Smith, 270 Pa. 583; Com. v. Ciere, 282 Pa. 492; Com. v. Valverdi, 32 Pa.

Superior Ct. 241; Com. v. Striepeke, 32 Pa. Superior Ct. 82; Com. v. Shoemaker, 240 Pa. 255.

The court below did not err in refusing to withdraw a juror on account of remarks made by the court: Com. v. McKeehan, 93 Pa. Superior Ct. 348; Com. v. Myma, 278 Pa. 505; Hill v. Torpey, 46 Pa. Superior Ct. 286.

OPINION BY MR. JUSTICE WALLING, April 20, 1931:

This appeal is by the defendant, Danny Day Del Giorno, herein called "the defendant," from death sentence imposed upon conviction of murder of the first degree, the verdict fixing that penalty. While the record discloses some interesting questions, there is nothing calling for a reversal. The defendant was tried separately, although indicted jointly with Frank Del Vaccio and Anthony Piccarilli, for the murder of Samuel Jacobs. The deceased's father, Aman Jacobs, had his store and residence at 1171 South Tenth Street, Philadelphia, where the deceased with his wife and two children also resided. On the late afternoon of July 13, 1929, the three defendants stopped the automobile, in which they came, in front of this store and, according to the testimony of the Commonwealth, as the deceased came from a near-by drug store, fired numerous shots at him by which he was killed and a customer at the store three times wounded; that after the shooting the defendants left the automobile and fled. Del Vaccio was first tried and a more detailed statement of the facts appears in Com. v. Del Vaccio, 299 Pa. 547. Self defense was interposed for the defendant, who offered evidence to the effect that the deceased came from the drug store with a revolver in each hand and proceeded to shoot up the car and its occupants, and that they, or one of them, fired at him in self defense. The jury properly rejected this defense. It was not highly probable that one man would attempt to assassinate three and it must be remembered that they sought him,

not he them; and no gun was found on the deceased or where he fell.

The defendants had come to see the deceased twice earlier that afternoon, and, according to the testimony of his mother, one of them, whose voice she recognized, had called for him on the telephone demanding money and had threatened him with personal harm if he refused. As she was acquainted with the one who used the telephone she was competent to identify his voice. See Dunham v. McMichael, 214 Pa. 485; Swing v. Walker, 27 Pa. Superior Ct. 366; 4 Wigmore on Evidence (2d edition) section 2155; 22 C. J. 193. As the defendants were acting in concert that day, the statements of one would be competent evidence against all.

Mr. and Mrs. Seemon, near neighbors, had come forward, after Del Vaccio was convicted, with the claim that they saw the shooting and that the deceased was the aggressor, although they had told the officers they knew nothing of it. This made ill feeling, which appeared in the testimony of the deceased's mother, in her cross-examination, as follows: "Q. Did Mrs. Seemon pick him [the deceased] up? A. Mrs. Seemon? Q. Yes. A. Mrs. Seemon, she was inside the house. Q. How do you know? A. Because when my daughter went in to call her, she was inside, and her husband. And that is all faking business, too. Q. What is? A. People come in to tell me I will be satisfied if I keep away, not to squeal on the fellow and leave him go, and they offer me fifteen hundred dollars or two thousand dollars." This the trial judge declined to strike out because he said it was in response to the questions asked. As the matter then stood it was impossible to say whether the answer was relevant. Unless the party who, the witness claimed, tried to bribe her was connected with the defense, it was irrelevant, and another question might have developed that fact. In the absence thereof, as the answer was in response to a question in cross-examination, we cannot say the court erred in refusing to strike

it out. In any event, it was not a matter of great importance. The belated manner in which Mr. and Mrs. Seemon came forward as witnesses for the defense, after denying all knowledge of the affair, called for a careful scrutiny of their testimony.

After the shooting, one of the other defendants was taken to the Howard Hospital, and the rejection of the hospital record, offered as tending to show he had a wound on his neck, is assigned as error. Such records are sometimes received in evidence (see 3 Wigmore on Evidence, 2d edition, section 1707), but are not generally competent: Harkness v. Swissvale Boro., 238 Pa. 544. Furthermore, the records had passed into the custody of another hospital, and the handwriting therein was not identified, or their authenticity shown. Again the evidence indicated that that defendant had a wound on his neck before the shooting. Better evidence would have been that of the surgeon who attended him. Under the circumstances, rejecting the records was not error. See Hay v. Kramer, 2 W. & S. 137; Com. v. Berney, 28 Pa. Superior Ct. 61; Bulkley v. Wood & Co., 4 Pa. Superior Ct. 391.

Complaint is made that the trial judge participated too freely and to the prejudice of the defendant in the cross-examination of certain of his witnesses. So far as no objection was made thereto at the time or exception taken, it is not the subject of review. As has been often said (see Com. v. Green, 294 Pa. 573; Hill v. Torpey, 46 Pa. Superior Ct. 286; Com. v. McKeehan et al., 93 Pa. Superior Ct. 348), it is the right and sometimes the duty of the trial judge to interrogate witnesses. Nevertheless it is a practice "more honored in the breach than the observance," and questions from the bench should never show bias or feeling. As to proper practice in such cases, see opinion of Mr. Justice KEPHART, speaking for the court, in Com. v. Myma, 278 Pa. 505, 508.

John Daher, a witness for the defense, told a highly improbable story about his being in front of the store earlier that afternoon when, at the request of the deceased, he permitted a stranger to put what turned out to be a loaded revolver in his [Daher's] cap, which he held in his hand while he stood there in the street for over an hour, until one of the defendants, grabbing it from him, used it in defense against the assault of the deceased. The witness soon left Philadelphia for seven or eight months and on his return told his story to the attorneys for the defense. It was so remarkable that the trial judge asked him why he did not tell it to the police officers and why he gave the information to the defense and not the Commonwealth, then asked: "Q. Why didn't you tell Justice what you knew? A. I am telling it now. Q. You are not telling it now at the behest of Justice—you are called by the other side"; and then asked, "Q. Why didn't you tell it to the police? A. I don't know." Taking the entire colloquy, it is apparent that what the judge had in mind and what would naturally be inferred therefrom by the word justice was the officers of justice; otherwise it was meaningless. Even assuming that the judge expressed an opinion that the Commonwealth's contention was right, while perhaps bad form, it was not reversible error inasmuch as he left the entire case to the jury. See Com. v. Del Vaccio, supra; Com. v. Ronello, 251 Pa. 329; Com. v. Cunningham, 232 Pa. 609; McClain v. Com., 110 Pa. 263. As stated by Chief Justice PAXSON, speaking for the court, in Com. v. Orr, 138 Pa. 276, 283: "We have said in repeated instances that it is not error for a judge to express his opinion upon the facts, if done fairly; nay, more, that it may be his duty to do so in some cases, provided he does not give a binding direction, or interfere with the province of the jury." Speaking for myself, however, the expression of opinions from the bench as to the merits of the case is not a practice to be commended in jury trials. In affirming a request submitted

by the defendant, as follows: "Your verdict must be based upon the evidence in this case; you are trying this defendant on the charge of the murder of one Sammy Jacobs, and upon no other charge. Regardless of who he is, of what nationality, from whence he came, he is presumed to be innocent of this charge until you are satisfied beyond a reasonable doubt of his guilt. You are not to be moved by prejudice or hatred, by passion or fear of criticism or public sentiment, for with the latter you have nothing to do, but your verdict must be solely the result of an honest, conscientious and intelligent consideration and review of all the testimony without fear or favor, and with no other influence but the law, and the evidence in this case, and your verdict must be in accordance with the conclusions based upon the evidence here presented and the law as the Court has given it to you, and upon nothing else," the trial judge put the case in a light most favorable for the defendant.

It was right for the judge, in defining murder, to instruct the jury that, "In this case we have to deal only with that kind of murder in the first degree described as 'wilful, deliberate and premeditated.' " That accords with the authorities. See Com. v. Bednorciki, 264 Pa. 124, 127; Com. v. Drum, 58 Pa. 9, 16. Had he omitted the words, "in the first degree" there would have been ground for complaint: Com. v. Frucci, 216 Pa. 84.

On the question of reasonable doubt he instructed the jury, inter alia: "In deciding upon a case, or upon any material part of it, it is the duty of the jury to give the prisoner the benefit of any reasonable doubt which arises from the evidence, and which prevents the jury from reaching a satisfactory conclusion........If you have an honest, reasonable doubt, such as I have defined to you, as to guilt, the prisoner would be entitled to the benefit of that doubt and to an acquittal. This applies not only generally to the question of guilt or innocence, but to every grade or degree of guilt that the jury must pass upon, and to every material and important ques-

tion that may arise and be necessary in order to reach a conclusion against the defendant." After that, to have answered the defendant's requests on that subject would have been mere repetition and no more essential than to answer duplicate requests. Such repetition might tend to confuse. "Over-elaboration of the definition of reasonable doubt often leads to refinements which tend to confuse rather than help the jury to a correct understanding of the doctrine": Com. v. Green, 292 Pa. 579, 580.

The criticism leveled at the charge as a whole is entirely without merit. It embraced every aspect of the case with judicial fairness, and careful reference both to the law and the facts. See Com. v. Weber, 271 Pa. 330.

The defendant left Philadelphia almost immediately after the shooting and was arrested in Los Angeles, California, fourteen months later. Meantime, he had been in Boston, St. Louis, New Orleans and other cities. This, as the trial judge stated to the jury, was evidence to be considered together with the other evidence in the case, as bearing upon the question of the defendant's guilt. This accords with the approved rule, as stated in Com. v. Boschino, 176 Pa. 103, that: "When a crime has been committed, and the person accused thereof knows he is accused, and then flees or conceals himself, such conduct is evidence of consciousness of guilt, and in connection with other proof may be the basis from which guilt may be inferred."

Complaint is made of remarks by the assistant district attorney in his address to the jury. While he used some expressions not the most appropriate, nothing is called to our attention that requires another trial. There were circumstances tending to show this was a gang murder, hence the district attorney might not improperly so characterize it. His remark to the effect that the police were unable to cope with the situation in South Philadelphia, so far as we can judge, did the defendant

no particular harm. The same might be said about other localities. Equally objectionable remarks by district attorneys in other cases have not been held sufficient to require reversal. See Com. v. Flori, 300 Pa. 125; Com. v. Del Vaccio, supra; Com. v. Smith, 270 Pa. 583; Com. v. Pennington, 249 Pa. 536; Com. v. Exler, 61 Pa. Superior Ct. 423. The effect of such remarks depends largely upon the atmosphere of the trial and the proper action to take in such case is largely a matter for the discretion of the presiding judge: Com. v. Ezell, 212 Pa. 293; Com. v. Striepeke, 32 Pa. Superior Ct. 82.

The case as presented by the Commonwealth contained every element of first degree murder and the credibility of the witnesses was for the jury. The assignments of error are all overruled, the judgment is affirmed and the record is ordered remitted for the purpose of execution.