## Commonwealth *v.* Crittenton, Appellant.

Argued March 22, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Henry Gouley,* for appellant.

*William R. Toal,* Assistant District Attorney, with him *William B. McClenachan, Jr.,* District Attorney, for appellee.

OPINION BY MR. CHIEF JUSTICE KEPHART, April 12, 1937:

Appellant was indicted for the murder of Mary L. Ginder, stewardess of Haverford College. He had been a dishwasher at the College for a number of years, and was dismissed by Mrs. Ginder on December 15, 1935, for reporting to work in an intoxicated condition. For a week he brooded over his dismissal, spending most of his time in speakeasies, taprooms and pool parlors. On December 23, 1935, he procured a double-barrelled shotgun from the closet of a lodger in his home, wrapped it in a curtain, tying a Christmas card on it to avert suspicion, placed twelve shotgun shells in his pocket and started off for the College, a considerable distance from his home, to revenge himself for his discharge. There was evidence that he had been drinking steadily. He first sought out Henry Skyles, the chef, to whom he attributed his dismissal because the latter had reported his intoxication to Mrs. Ginder. Finding Skyles' apartment dark, he proceeded to the servants' dining hall where he found Mrs. Ginder, an elderly woman, enjoying a Christmas dinner with members of her family. Appellant opened the connecting door between the kitchen and the dining room, pointed his gun first at the wife of Mrs. Ginder's son, and then directed it at Mrs. Ginder, who sat about four feet from the door with her back to him. He discharged one shell into her brain, completely blowing away the side and back of her head, causing her instant death, then turned and walked away. The decedent's son started in pursuit and was joined by a watchman, but appellant threatened them with the gun and made his escape. Shortly thereafter he appeared at the

home of friends in Ardmore, visibly excited and brandishing the gun, saying, "I did it; I did what I wanted to do." Frightened by his manner and detecting signs of drink, his friends disarmed him and persuaded him to take a walk. In the course of his walk, he met a policeman and surrendered himself. He denied any recollection of procuring the gun, but he had been sufficiently in possession of his senses to recognize and speak to a friend whom he passed on the way to the College. The police witnesses testified that when questioned he was not drunk and remembered, in detail, all of the facts connected with the shooting. At the trial appellant's defense was intoxication, but it was not vigorously pressed, and his counsel devoted most of his argument to a plea for life imprisonment. The jury found appellant guilty of murder in the first degree, with the sentence of death.

This appeal is based solely upon remarks made by the prosecuting attorney in his closing address to the jury, which it is alleged were prejudicial and prevented the jury from reaching a fair verdict. Appellant's counsel objected to some of them at the time they were made, but stated that he did not intend to move for the withdrawal of a juror, and left their effect for correction by the charge of the court.

While the address of counsel to the jury is not a part of the record, when improper remarks are made, the attention of the trial judge should be called to them at once and a motion made to withdraw a juror. See *Commonwealth v. Wilcox*, 316 Pa. 129, affirming, Per Curiam, 112 Pa. Superior Ct. 240, for a history of the review of this question. The methods of procedure are there outlined. See also *Commonwealth v. Benjamin*, 100 Pa. Superior Ct. 505; *Commonwealth v. Westwood*, 324 Pa. 289; *Commonwealth v. Deni*, 317 Pa. 289.

There is dicta in some of the cases that where the remarks are of an extremely improper nature and materially detrimental to the fair trial of a case, the trial

judge should, of his own motion, order the withdrawal of a juror. See *Commonwealth v. Mudgett,* 174 Pa. 211, 257; *Commonwealth v. Forgione,* 114 Pa. Superior Ct. 275, 282. This power is rarely exercised; its use is within the sound discretion of the trial judge: *Commonwealth v. Mudgett,* supra. In *Commonwealth v. Davison,* 99 Pa. Superior Ct. 412, it was said, in an opinion by Mr. Justice LINN, then a judge of that court: "The trial judge is in control of the trial, is better informed of what takes place in his presence, and therefore better qualified to pass on the probable effect on the jury of ill-advised argument of counsel than an appellate court."

Although this appeal could be disposed of solely upon this ground, the gravity of the case compels a further consideration of the merits of appellant's objections. Appellant likens the prosecutor's remarks with reference to life imprisonment* to those made in *Commonwealth v. Clark,* 322 Pa. 321, which this court disapproved and ordered a new trial, as we did for similar remarks in *Commonwealth v. Williams,* 309 Pa. 529. There were other grounds for reversal in those cases; the holdings must be construed in the light of the individual records in their entirety, just as the remarks in the present case must be considered with reference to

---

* "And there have been cases where that has meant only 12 or 14 years and we all know it."

"Life imprisonment? Is there any such a thing under our system of parole? Under our present system of parole, how do we know in the future but that this man will be paroled at some future date?" (This remark was repeated after a warning by the trial judge.)

"He [the defense counsel] can tell you about penal servitude, where they sit in a cell, but there is no such penalty as that to-day in Pennsylvania. They have their baseball games and matches, they have their social activities, they have their library, they have their educational room, and they can get an education in the penitentiary to-day. Eastern Penitentiary, I know what the conditions are there, and when Mr. Gouley would paint to you the drabness of life there, I say the only thing they are without is freedom."

the facts, the circumstances under which they were made and the effect they might have had upon this jury. The emphasis in the present remarks was upon the fitness of life imprisonment as a punishment for the particular defendant. The statements were in answer to the remarks of defense counsel who urged the choice of life imprisonment as the more severe of the two punishments, painting a picture of misery behind prison walls which might have influenced the jury to regard it as the most drastic penalty within their power to inflict. The district attorney merely attempted to present the other side of the picture to overcome the effect of such remarks. While unquestionably a prosecuting attorney should refrain from remarks depicting what might happen if certain punishments were inflicted, the statements here made in answer to defendant's argument did not so prejudice appellant's case as to require a reversal, and no objection was taken to the charge of the court for not calling these remarks to the attention of the jury.

The prosecuting attorney is also charged with having inflamed the minds of the jurors against the defendant by several defamatory statements. But these remarks were incited by the inferences which defendant's counsel sought to draw from defendant's conduct in submitting to arrest. See *Commonwealth v. Gilida*, 309 Pa. 501.

However, we must again call the attention of district attorneys to their closing arguments to the jury. They may state reasonable inferences from the facts and comment with some severity, in proper cases, upon the credibility of defendant's testimony. They may press with zeal the Commonwealth's case and by fair arguments discredit that of the prisoner; we have sustained certain colloquial expressions exemplifying this meaning: *Commonwealth v. Massarelli*, 304 Pa. 335; *Commonwealth v. Benjamin*, supra; *Commonwealth v. Touri*, 295 Pa. 50; *Commonwealth v. Del Vaccio*, 299 Pa. 547.

But where a defendant is on trial for his life the district attorney should be extremely careful not to become a persecutor, nor to introduce unfair arguments tending to unbalance the jurors' minds or unduly influence their action. He must remember, as district attorney he is a quasi judicial officer and should conduct himself as such with dignity and fairness.

Defendant objects particularly to the following remark: "If a rabid dog or a rattlesnake or some loathsome creature of some kind were attacking your little child, you would run out and try to protect it; you would have no hesitancy in killing a wild boar or a tiger or any animal of that description that was a beast of prey and stalking your child as its victim. And, I say to you, members of the jury, from the evidence in this case, he was almost like a beast of prey that night, stalking for its victim, and that he had the formed intent in his mind of deliberate, planned murder." While this language should be severely censured as intemperate, uncalled for and improper, it does not warrant setting aside the verdict. See *Commonwealth v. Mika,* 317 Pa. 487; *Commonwealth v. Davison,* supra; *Commonwealth v. Smith,* 270 Pa. 583, and *Commonwealth v. Cicere,* 282 Pa. 492.

Under the facts of the present case these remarks did not present to the jurors a more terrible picture than the actual killing described by the witnesses. The rule, stated in *Commonwealth v. Meyers,* 290 Pa. 573, provides a solution in cases of this sort. In that case it was said: "Where, under all the circumstances of the case, the verdict rendered is a just one, the language of the prosecuting officer which will justify a reversal must be such that its unavoidable effect would be to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant, so that they could not fairly weigh in his behalf such circumstances of doubt, extenuation or degree of guilt that may be present in the case, and thus make them unable to render a true verdict."

Individual statements of counsel, standing alone, cannot be considered as determinative of error. It is their likely effect and not the words themselves that govern. And, as was there pointed out, where the overwhelming preponderance of the evidence supports the verdict of the jury, the language complained of must be unusually strong to justify an appellate tribunal in setting aside an otherwise unobjectionable conviction. See also *Commonwealth v. Wilcox*, supra; *Commonwealth v. Massarelli*, supra.

Other statements not of convincing importance were made which need not be considered separately. Defendant's counsel had a most difficult case; there was a crime of violence, shocking in its brutality. For the sordid motive of revenge the life of a kindly woman was destroyed by a cold-blooded attack in the presence of her loved ones at a happy holiday gathering. Although the district attorney was guilty of several lapses in restraint in presenting his address to the jury, the crime itself is of such nature that it cannot be presumed as a matter of law that the jury was unduly prejudiced by these remarks. Indeed, the recital of the crime from the evidence no doubt produced such an effect on the jury that nothing in these remarks was able to accentuate it. The record shows that the testimony was fairly presented in a clear manner, with but few interruptions by counsels' objections. The charge itself was temperate and devoid of error. Appellant unquestionably received a fair trial. Under the authority of our cases, therefore, there is no basis for a reversal because of the impropriety of these statements. The record discloses all the essential ingredients of murder in the first degree.

Judgment affirmed and record remitted for the purpose of execution.