393 A.2d 876

**COMMONWEALTH of Pennsylvania**

v.

**Granfort RODGERS, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 31, 1977.

Decided Oct. 20, 1978.

378

John W. Packel, Assistant Public Defender, and Benjamin Lerner, Defender, Philadelphia, for appellant.

Michael R. Stiles, Assistant District Attorney, and F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PER CURIAM:

This is an appeal from the judgment of sentence of the Criminal Division of the Court of Common Pleas of Philadelphia County by the appellant, Granfort Rodgers, following his conviction in a jury trial of the charges of robbery and simple assault. Timely filed post verdict motions were denied. Thereafter this appeal.

The facts are as follows: Appellant was arrested on August 12, 1976 and charged with robbery and related

offenses. At trial, the complainant, Abis Looser, testified that he was accosted by a man on Mt. Vernon Street in Philadelphia and following a short struggle, complainant was robbed of $8 in cash, cigarettes and his eye glasses. Complainant subsequently recovered his eye glasses. Complainant followed appellant to a vacant house on Twelfth and Green Streets where the police met the complainant who directed them to the house in which appellant had entered. Finding nobody in that house, the police were told by complainant that his assailant had entered another house. When the police emerged from the second house, they had appellant in custody. The complainant identified appellant as his assailant at that time.

At trial, both complainant and a second floor eye witness identified appellant as the assailant.

On February 9, 1977, the jury returned verdicts of guilty on both charges.

Appellant posits two trial errors: first, that the court failed to give appropriate cautionary, jury instructions concerning complainant's in-court identification of the appellant as mandated by *Commonwealth v. Kloiber*;[1] and second, the court erred in refusing to grant appellant's motion for a mistrial following the district attorney's alleged improper and inflationary closing to the jury.

With appellant's contentions, we do not agree. Judgment of sentence affirmed.

The *Kloiber* court stated at page 424, 106 A.2d at page 826:

Where the opportunity for positive identification is good and the witness is positive in his identification and his identification is not weakened by prior failure to identify, but remains, even after cross-examination, positive and unqualified, the testimony as to identification need not be received with caution—indeed the cases say that " 'his [positive] testimony as to identity may be treated as the statement of a fact' ": [citations omitted]

1. 378 Pa. 412, 106 A.2d 820 (1954).

On the other hand, where the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution.

The above standard for cautionary instructions has been reaffirmed in *Commonwealth v. Wilkerson*, 204 Pa.Super. 213, 203 A.2d 235 (1964) and *Commonwealth v. Mouzon*, 456 Pa. 230, 318 A.2d 703 (1974).

In its charge, the trial court more than adequately satisfied *Kloiber* when it included, *inter alia:*

In determining whether to accept as accurate the identification testimony of Mr. Looser and Mr. Pulido, that is the man upstairs, using caution for the reason I just mentioned, you must also take into consideration the following matters: Whether the testimony of the identification witness is generally believable. Whether his opportunity to observe was sufficient to allow him to make an accurate identification. How the identification was arrived at. All the circumstances indicating whether or not the identification was accurate. And, also, whether the identification testimony is supported by other evidence and you must conclude that it is so supported before you can accept it as being accurate. (T. 202–203)

Tangential to the argument above, appellant contends that the district attorney acted improperly by intimating in his closing to the jury that that portion of the transcript of the preliminary hearing *which had not been read to them*, if read to them, would have bolstered and supported complainant's in-court identification of the appellant when, in fact, the district attorney knew, or should have known, that it would not (See N.T. at 80–85).

We have reviewed the dialogue in question (N.T. 174) and conclude that same likely did not mislead the jurors into

drawing an unwarranted or erroneous inference from the fact that they were not privy to the entire preliminary hearing transcript.

Lastly, appellant argues that he is entitled to a new trial as a result of certain inflammatory and stigmatizing remarks contained in the district attorney's closing to the jury. See *Commonwealth v. Harvell*, 458 Pa. 406, 327 A.2d 27 (1974) and *Commonwealth v. Collins*, 462 Pa. 495, 341 A.2d 492 (1975).

However, as is stated in *Commonwealth v. Stoltzfus*, 462 Pa. 43, 61, 337 A.2d 873, 882 (1975):

". . . [E]ven where the language of the district attorney is intemperate, uncalled for and improper, a new trial is not necessarily required. *Commonwealth v. Crittenton*, 326 Pa. 25, 31, 191 A. 358 (1937); *Commonwealth v. McHugh*, 187 Pa.Super. 568, 577, 145 A.2d 896 (1958). The language must be such that its 'unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict.' *Commonwealth v. Simon*, 432 Pa. 386, 394, 248 A.2d 289, 292 (1968). See also, *Commonwealth v. Myers* [sic], 290 Pa. 573, 139 A. 374 (1927). The effect of such remarks depends upon the atmosphere of the trial, *Commonwealth v. Dickerson*, 406 Pa. 102, 110, 176 A.2d 421 (1962); *Commonwealth v. Del Giorno*, 303 Pa. 509, 519, 154 A. 786 (1931), and the proper action to be taken is within the discretion of the trial court."

We have reviewed the portion of the closing objected to by appellant (T. 187–9) as well as the closing in its entirety to determine if same may have inflamed the passions of the jurors so as to possibly have effectively denied appellant a fair trial. Despite some questionable comments and unnecessary remarks, we conclude that same did not rise to such a degree as to constitute reversible error and warrant the grant of a new trial.

Judgment of sentence affirmed.

SPAETH, J., files a dissenting opinion, in which JACOBS, President Judge, joins.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, dissenting:

I disagree with the majority's conclusion that the assistant district attorney's remarks in closing to the jury do not require a new trial.

In closing, the assistant district attorney said:

Just remember ladies and gentlemen, judge this case using your common sense, reasonable doubt, it is very easy to do. This place is not like a TV show. The whole thing is not a TV show. This is human beings. Speaking of TV shows, there was a TV show on Saturday, I think it was called The World of Survival, or something like that. They were talking about the Serengeti Plains in Africa, they were talking about lions. Think of the lion as a noble creature. They will go up and knock down something and eat it, it is part of their nature. I watched this show and the lion does not go for the leader of the herd, the lion did not go for the strong, the fast, the tough, the lions lie and wait until they could see the aged, the weak, the crippled, the sick. It is upon those persons whom the lions prey.

MR. SNEE: Objection, Your Honor.

MR. CASTILLE: Not those persons, those animals.

THE COURT: It is argument but I don't know where we are going. We better be careful where we are going.

MR. SNEE: Are you overruling my objection?

THE COURT: At the moment I will overrule your objection.

MR. CASTILLE: The lion makes a kill on these plains and you can see coming around are these other little animals, jackals. After the lions go, the jackals move in and the vultures move in. I was struck by this. The situation we had here at 12th and Mt. Vernon, the aged, the weak—

MR. SNEE: I will renew my objection.

THE COURT: Overruled.

MR. CASTILLE: The weak of our society, the old, the infirm, they are good targets if you need a little money, real good targets.

N.T. 186–188.

The standards to be applied in appraising these remarks are long settled, and have only recently been insisted upon by our Supreme Court in *Commonwealth v. Starks*, 479 Pa. 51, 387 A.2d 829 (1978). There the Court said:

"As we have stated time and again, a prosecuting attorney is an officer of the court and has a duty to see that justice is not compromised in an effort to seek convictions. *Commonwealth v. Collins*, 462 Pa. 495, 341 A.2d 492 (1975); *Commonwealth v. Revty*, 448 Pa. 512, 295 A.2d 300 (1972). As we put it in *Commonwealth v. Potter*, 445 Pa. 284, 287, 285 A.2d 492, 494 (1971):

'This Court has made clear ". . . that the prosecuting attorney enjoys an office of unusual responsibility, and that his trial conduct should never be vindictive or attempt in any manner to influence the jury by arousing their prejudices." *Commonwealth v. Toney*, 439 Pa. 173, 180, 266 A.2d 732, 736 (1970). Likewise, the ABA Standards Relating to the Prosecution Function recognize: "The prosecutor is both an administrator of justice and an advocate; he must exercise sound discretion in the performance of his functions." ABA Project, Prosecution Function, supra at § 1.1(b). Furthermore, "[t]he duty of the prosecutor is to seek justice, not merely to convict." Id. at § 1.1(c).'

With respect to the closing argument of the lawyer for the Commonwealth, we have expressly adopted the rationale of the A.B.A. Standards Relating to the Prosecution Function. See, e. g., *Commonwealth v. Joyner*, 469 Pa. 333, 365 A.2d 1233 (1976); *Commonwealth v. Cronin*, 464 Pa. 138, 346 A.2d 59 (1975); *Commonwealth v. Collins, supra*. We again set forth the provisions of Section 5.8 of those Standards:

'(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

'(b) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth of falsity of any testimony or evidence or the guilt of the defendant.

'(c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

'(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.' "

479 Pa. at 56, 387 A.2d at 831–832.

By characterizing appellant as a lion lying in wait for "the aged, the weak, the crippled, the sick," the assistant district attorney violated his responsibility as an officer of the court to see that justice was done.

It is never permissible to characterize another person as an animal.

The word *animal* is of particular significance to the anthropologist who knows that in many "primitive" societies this is the word used most often to distinguish people from "nonpeople," or "the others." Exactly the same concept of exclusivity underlies racism, religious fanaticism, economic warfare, political chauvinism, and other similar characteristics that exist in our modern society . .

Turnbull, *Death by Decree*, Natural History, April/May 1978 at 51.

Slavery was possible only because the slaves were seen as less than people. *See* A. Leon Higginbotham, *In the Matter of Color* 50–53 (1978) (the pages cited are a chapter subdivision, entitled "Creditor and Estate Rights in Slaves: Were Slaves Like Horses and Dogs or Like Real Estate?") The

tragedy of *Dred Scott v. Sandford*, 60 U.S. 393, 15 L.Ed. 691 (1857), was that there the Court held that "We the people" did not include black people. Similarly, it was for many years the attitude of the courts that prisoners were "slaves of the state," and so with no right to decent treatment. *See, e. g., Ruffin v. Commonwealth*, 62 Va. (21 Gratt.) 790, 796 (1871).

The moment we classify another person as a thing or animal, we free ourselves from the obligation to treat that person as someone with inalienable rights. We should never permit an assistant district attorney to invite a jury to engage in such thinking.

The judgment of sentence should be vacated, and the case remanded for new trial.

JACOBS, President Judge, joins in this opinion.