435 A.2d 864

**COMMONWEALTH of Pennsylvania,**

v.

**Kenneth E. RAFFENSBERGER, Appellant.**

Superior Court of Pennsylvania.

Submitted March 6, 1980.

Filed Sept. 4, 1981.

194

H. Stanley Rebert, Assistant Public Defender, York, for appellant.

Daniel F. Wolfson, Assistant District Attorney, York, for Commonwealth, appellee.

Before CERCONE, President Judge, and WATKINS and MONTGOMERY, JJ.

CERCONE, President Judge:

■ Under our system, one accused of a crime is presumed innocent until the prosecuting attorney has demonstrated beyond a reasonable doubt to an impartial jury of the vicinage that he and the malefactor are identical, or that his actions match the definition or conform to the elements of the malefaction of which he stands accused. This presumption of innocence is but one of the many aspects of the fundamental law of our land. Like its counterparts, it emanates from the core concept which seeks to restrain governmental excess and prevent abuse by those exercising state power. As it pursues justice the Commonwealth is thus committed not only to the principle that one is innocent until proven guilty, but also to the principle of fairness in criminal prosecutions. Indeed, these principles are complementary, one without the other would frustrate the ends and objectives of justice.

■ Equally fundamental to our system of the administration of justice is the notion of impartiality. We have restrained the Commonwealth's power to obtain guilty verdicts by requiring that the jury be impartial. This requirement encompasses not only that impartiality attained by culling the jury from the venire, but also impartiality in the way it reaches its verdict. In other words, the verdict must be "intellectually compelled after a disinterested, impartial and fair assessment of the testimony...presented." *Commonwealth v. Harvell*, 458 Pa. 406, 411, 327 A.2d 27, 30 (1974). For this reason, we do not permit the Commonwealth to obtain a verdict in its favor by appealing to a jury's attributes other than those of reason and perception. This is all the more true because of the quasi-judicial role of the prosecuting attorney and the likelihood that the jury will trust him in what he says, believing in its innocence that he will always fulfill his role within permissible bounds. *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935); *Commonwealth v. Revty*, 448 Pa. 512, 295 A.2d 300 (1972); *Commonwealth v. Sargent*, 253 Pa.Super. 566, 385 A.2d 484 (1978). As our representative in the

criminal court proceedings, the prosecuting attorney seeks no victims, only justice. *Commonwealth v. Revty, supra; Commonwealth v. Sargent, supra.* Although he may personally believe that the evidence clearly indicates the accused's guilt, we allow him only to argue fair deductions and appropriate inferences from the evidence, *Commonwealth v. Revty, supra,*

> [s]o that the jury can dispassionately and objectively evaluate the testimony in a sober and reflective frame of mind that will produce judgment warranted by the evidence and not inspired by emotion or passion.

*Commonwealth v. Harvell,* 485 Pa. at 411, 327 A.2d at 30. *And see Commonwealth v. Gilman,* 470 Pa. 179, 368 A.2d 253 (1977). To allow him to do otherwise would be to permit the Commonwealth to overstep the limits which we have imposed for the protection of an individual's fundamental rights and liberties.[1]

With the foregoing firmly in mind we turn now to the case at bar, which is, as we have intimated above, a prosecu-

1. *See Commonwealth v. Gilman, supra,* 470 Pa. at 188, 368 A.2d at 257, quoting the following from the ABA Project on Minimum Standards for Criminal Justice, Standards Relating to the Prosecution Function and the Defense Function, Prosecution Function § 1.1 (approved Draft, 1971), commentary at 44:

> "Although the prosecutor operates within the adversary system, it is fundamental that his obligation is to protect the innocent as well as to convict the guilty, to guard the rights of the accused as well as to enforce the rights of the public."

Furthermore, Section 5.8 of the ABA Standards states:

> "(a) The prosecutor may argue all reasonable inferences from the evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.
>
> (b) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.
>
> (c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.
>
> (d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict."

*Cf. Commonwealth v. Gilman, supra,* and cases cited there.

tion for rape and kidnapping. The uncontroverted evidence shows the following to be true. In the early evening of August 10, 1975 the victim, a young woman of seventeen, was walking along a road in York County on her way home. As she proceeded she was accosted by six men in a pick-up truck. Four of the men were in the rear of the vehicle; the other two were seated in its cab. They made several lewd remarks and then suddenly two of the six snatched her from the roadside, deposited her in the rear of the truck, and returned themselves to their former positions, whereupon the vehicle sped away from the scene of the abduction. The victim was later able to identify one of the two abductors who first laid hands on her as one of the passengers in the rear of the truck. Her second captor was the passenger in the truck's cab. The victim was unable to see this man's face, but could see the length and color of his hair, which was similar to appellant's. The truck travelled the back roads of York County for some time, making at least one stop before reaching its destination. During this traverse of the county, the victim was able to catch glimpses of appellant, who was then seated in the passenger's seat of the truck and who turned several times to look out the back window at the doings in the rear of the vehicle.

Upon arriving in a deserted area of the county, the victim was removed from the truck and taken several yards from the vehicle. She was forced to the ground and raped by at least four members of the group, but not by appellant. When the victim feigned unconsciousness she was taken to nearby Shrewsbury and dumped beside the road. After some initial panic she ran to the house of a friend who summoned police and medical assistance.

Immediately following these events the victim was able to identify with precision the four men who had been in the rear of the truck, all of whom were subsequently convicted of rape. Her description of the fifth man was less clear, but she could say that he had hair of a color and length similar to the second of her two abductors, and that she saw his face, following the abduction, at which time he was in the

truck's passenger's seat. Furthermore, she could say that this fifth man had been present at the scene of the rape, but had not known her carnally himself. Of the sixth man she could give no description whatsoever.

Some months after the incident the victim identified appellant as the fifth man, and based on his hair color and his position in the cab of the truck when she first saw his face, as the second of the two abductors. He was subsequently arrested and charged with three violations of the Pennsylvania Crimes Code, specifically, Section 3121(1) (rape by forcible compulsion), Section 2901(a)(3) (kidnapping to inflict bodily injury or to terrorize the victim), and Section 2702(a)(1) (aggravated assault). Crimes Code, 18 Pa.C.S. §§ 3121(1), 2901(a)(3), 2702(a)(1). At trial, the Commonwealth sought to prove that appellant was one of the two men who had originally removed the victim from the roadside, based on the victim's identification of appellant. The Commonwealth also sought to prove that appellant acted as an accomplice to the victim's subsequent rape and confinement. Appellant's defense to the initial abduction rested on the contention that the victim was mistaken in her identification of him as one of the abductors. He admitted that when the victim first saw his face he was seated on the right side of the vehicle, but denied he participated in the abduction. He contended, rather, that at the time of the abduction he was the driver of the truck, and that by the time the victim first had the opportunity to see him he had been obliged by his fellows to yield the steering wheel to one less intoxicated than he. He further argued that the coincidence of similar hair color and the change in seating arrangements inside the cab worked together to create the impression in the victim's mind that he was the abductor. Appellant presented corroborating testimony concerning his inebriation and the fact that his fellows obliged him to let someone else drive. In defense to the Commonwealth's theory that he acted as an accomplice to the victim's subsequent confinement and rape, appellant sought to exculpate himself on the theory that his inebriation was so extensive that he was

incapable of forming the requisite intent to aid and abet the commission of the crime physically perpetrated by his companions. Appellant demurred to the assault charge, which demurrer was sustained. The jury found appellant guilty of the two remaining counts and the court subsequently sentenced him to a term of imprisonment of not less than seven and one half and not more than fifteen years in a state correctional institution. It is from this judgment of sentence that the appeal is brought.

■ Appellant contends that the trial court committed error when it refused to grant a motion for mistrial following allegedly prejudicial remarks by the prosecuting attorney during his summation speech.[2] Immediately following the prosecutor's summation, counsel for appellant moved for a mistrial based on the allegedly prejudicial remarks the prosecutor had made. Since the argument was recorded, an objection at the close thereof was timely. *See Commonwealth v. Gilman, supra; Commonwealth v. Adkins*, 468 Pa. 465, 364 A.2d 287 (1976); *Commonwealth v. Allessie*, 267 Pa.Super. 334, 406 A.2d 1068 (1979). The causes for the mistrial motion were reiterated in appellant's post-verdict motions and are thus preserved for our review.

■ Essentially, appellant has preserved for our consideration four types of alleged prejudicial statements by the prosecuting attorney during his summation speech:

(1) an alleged "guarantee" to the jury that the victim would recall clearly what happened to her because of the intense emotion associated with the events;

(2) the argument that appellant's failure to call a witness—one of the four men previously convicted of the same crime—allows the jury to infer that his testimo-

---

**2.** Appellant has assigned four other errors, three of which we need not discuss in light of our disposition today. Those three assignments of error are: 1) failure to grant a new trial following contamination of the jury when the victim's boyfriend conversed with one of the jurors; 2) error in the charge to the jury; 3) ineffective assistance of counsel. We will address the fourth assignment of error, an allegation of the violation of appellant's Rule 1100 rights.

ny would have been damaging to the defendant had defendant called him;

(3) continuous personal remarks by the prosecutor which placed his own credibility at issue;

(4) the claim that defense counsel was attempting to make the jury appear foolish.

We can dispose of the first and second alleged prejudicial remarks without extensive discussion. Appellant contends that the prosecutor "guaranteed" to the jury that the victim recalled her experience completely and fully. This so-called "guarantee" was nothing more than the argument that someone who had experienced emotional trauma as intense as the victim's rape must have been would recall the facts associated with that trauma exactly as they had occurred. This was clearly not improper argument. *See Commonwealth v. Gunderman*, 268 Pa.Super. 142, 147, 407 A.2d 870, 872 (1979) (Opinion per Cercone, P. J.) (Footnote 1). As for the argument concerning the missing witness we can find nothing prejudicial in it. *See Commonwealth v. Gwaltney*, 479 Pa. 88, 387 A.2d 848 (1978).

The remaining remarks require somewhat more discussion. In considering these remarks we must be mindful of the fact that the balance in this case is a delicate one. This was not the case of a prosecution for actual rape. The violators of the victim's corporal sanctity had already been brought to justice. In the instant case, however, there was neither evidence presented nor the contention made that appellant was one of the rapists. Rather, the question to be placed before the jury on the rape charge was one subtler than whether appellant had or had not violated the victim's person. It was to be a question which dealt with appellant's intent: did he aid and abet his fellows in their heinous act, or was he merely present, too drunk to come even to his own aid? As for the kidnapping charge, the question was to be whether the victim correctly or incorrectly deduced that appellant was one of the abductors based on her observations only of the perpetrator's hair color and that the cab's passenger had done the deed, and conclusion that appellant,

who admits to having been in the passenger's seat later, was seated there at the time of the abduction. The circumstances of the case and the evidence adduced at trial raised fine questions for the jury's determination. Although these questions were not so subtle that the jury, in its wisdom, and guided by its common sense and a dispassioned analysis of the evidence, could not have decided them, they were of such a nature that the jury easily could have been swayed to render an improper verdict by the prejudicial remarks of an over-zealous prosecutor.

The pertinent portions of the prosecutor's summation reads as follows:

"May it please the Court, defense counsel, gentlemen of the Jury. I am not going to spend an hour and a half talking to you like [Defense Counsel] did, Because [sic] I don't believe it takes one and a half hours for you to evaluate and to think about the facts and to make a decision based on justice.

\* \* \* \* \* \*

You know, gentlemen, defense counsel, and I say this sincerely and I also say this in terms of argument, but the defense counsel, I believe, is trying to make a fool out of this Jury.

\* \* \* \* \* \*

Gentlemen, if I could relay the story—and this has nothing to do with the evidence, but something that happened to me and I think you can think in terms of your own lives, because something similar may have happened to you.

When I was in college in 1963, November 22nd, 1963, and I will never forget that date, because on that date John F. Kennedy was killed. I remember I was driving to school and I remember this and I remember it very distinctly and I walked onto the campus and a girl I had dated came up to me and said, "Dan, you heard that Kennedy was killed," and she said, "I am glad it happened. He deserved it." Quite frankly, gentlemen, that stunned me and I will never forget that if I live to be 110 years

old, because the death of the President at that time was a very emotional thing for me, extremely emotional thing for me, but more than that, the statement made by that girl, and I know what she was saying, and I know what she was wearing, I know where she was standing, and I remember everyone around her. I remember it very well.

\* \* \* \* \* \*

All of this that [Defense Counsel] wants to throw at you about the method of identification and the issue whether or not he was charged at this time or another time, all of that was fully resolved on July 26th. On July 26th of this year there was a full pre-trial hearing on this whole issue . . .

[Defense Counsel]:

I object, Your Honor.

THE COURT:

I don't think we should go into the pre-trial procedure and I will tell the Jury to disregard that.

[The Commonwealth]:

Gentlemen, I would say one other thing, I would say that this issue has been resolved . . .

[Defense Counsel]

I have to again object, Your Honor.

THE COURT:

Are you going to say the same thing, or something else?

[The Commonwealth]

I will continue . . .

THE COURT:

We will repeat the statement, gentlemen, Pre-Trial proceedings are something else. They are not before you and shouldn't be considered by you and you will disregard them.

\* \* \* \* \* \*

[The Commonwealth]

Gentlemen, [Defense Counsel] mentioned reasonable doubt. The Commonwealth does not have to prove absolute doubt. Once I had a high school teacher say to me,

some people would have difficulty proving they are even alive. We are not under that obligation. We are under the obligation of reasonable doubt. May I state, gentlemen, this is not a TV program, this is not Kojack [sic]. I don't go into the back room and turn on a movie projector, and I don't show you all the facts, you have to listen to the facts and make a decision based upon credibility.

Gentlemen, I represent the county, and I am sworn to represent in this county 225,000 people...

[Defense Counsel]: I object....

THE COURT:

I will overrule that objection....

[The Commonwealth]

As I indicated to you, I represent 225,000 people in this Commonwealth, but also gentlemen, I think you should think about this carefully, you also represent this community and that's why, in fact we have juries. Because we want the people of the Commonwealth to judge it's offenders, making decisions as to their guilt or their lack of guilt. Gentlemen, and I mean this seriously, nothing would trouble me more and...

THE COURT:

[Mr. Prosecutor], could I see you a moment please?

SIDE BAR:

THE COURT:

You are all right so far, but you have a habit of using "I" and "me" and I wish you would keep it out. You are getting close to, I don't know if you are pointing in that direction, of giving a personal opinion or you "believe this" or you "believe that." I think it's better just to talk in terms of suggesting or indicate without getting so personal."

\* \* \* \* \* \*

It is undeniably clear that the tone and tenor of the prosecutor's summation is personal. The passages above set out do not constitute isolated personal-references or slips into the use of the grammatical first person, but rather a

continual stream of personal remarks and anecdotes. The inevitable effect of such a concentration of personal remarks by the prosecutor is to introduce to the jury's minds a question concerning the credibility of the prosecutor vis-a-vis appellant and the other defense witnesses. The jury was given more than just glimpses into the prosecuting attorney's persona, however. At least one of these remarks, the reference to the pre-trial proceeding and the question of appellant's identification by the victim, was infirm on grounds other than simply the personal innuendo inherent in the remark. The court immediately cautioned the jury to disregard any reference to pre-trial matters, but the prosecutor repeated the remark and the court was forced to caution the jury again.[3]

Perhaps the single most troubling remark is the following one:

> You know, gentlemen, defense counsel, and I say this sincerely, and I also say this in terms of argument, *but the defense counsel*, I believe, *is trying to make a fool out of this jury.* He wants to make you believe that poor Kenneth Raffenberger is just riding around the country. Got himself a little bit drunk, and really had no idea what he was doing. . . . (Emphasis added)

This statement unmistakenly alters the issue before the jury. No longer were they being asked to determine the witnesses' or appellant's credibility, but rather the prosecutor's; no longer were they being asked to determine whether the evidence showed beyond a reasonable doubt that appellant's actions fell within the bounds of statutorily prohibited behavior, but to determine whether or not they, the members of the jury, would appear as fools to the 225,000 inhabitants of York County. Furthermore, not only does the remark challenge the jury to render a verdict of guilty because otherwise they would appear foolish, but it

---

**3.** We note, in passing, that cautionary remarks are not *always* sufficient to cure the harm done by a prejudicial statement. *See Commonwealth v. Joyner*, 469 Pa. 333, 365 A.2d 1233 (1976) (Footnote 7); and *Commonwealth v. Russell*, 456 Pa. 559, 322 A.2d 127 (1974).

expresses a personal opinion about the defendant's trial strategy. On the latter point the Supreme Court has stated:

> · Our decisions have firmly established that the prosecutor may not express his personal opinion regarding a defendant's guilt, credibility, or trial strategy. We have ruled that [t]he determination of guilt must *not* be the product of fear or vengeance, but rather intellectually compelled after a disinterested, impartial and fair assessment of the testimony that had been presented. *Commonwealth v. Harvell, supra*, 458 Pa. at 411, 327 A.2d at 30 (emphasis in original).

*Commonwealth v. Gilman*, 470 Pa. at 189–190, 368 A.2d at 258. (Footnotes omitted). The prosecutor's statement undeniably violates the prohibition against comment on defense counsel's trial strategy. So too does the statement about the pre-trial proceedings when the prosecutor said:

> All of this that [Defense Counsel] wants to throw at you about the method of identification. . . .

The statement clearly disparages defense counsel's method of defending his client. It also implies that the defense strategy was not aimed so much at determining the truth but at hiding it from the jury.

 It is, of course, the law in Pennsylvania that not every improper remark by a prosecutor requires the granting of a new trial. *Commonwealth v. Crittenton*, 326 Pa. 25, 191 A.2d 358 (1937); *Commonwealth v. Rodgers*, 259 Pa.Super. 376, 393 A.2d 876 (1978); *Commonwealth v. Nutter*, 256 Pa.Super. 111, 389 A.2d 626 (1978). The Supreme Court has often repeated that

> the language of the prosecuting officer which will justify a reversal must be such that its unavoidable effect would be to prejudice the jury, forming in their own minds a fixed bias and hostility toward the defendant, so that they could not fairly weigh in his behalf such circumstances of doubt extenuation, or degree of guilt that may be present in the case, and thus make them unable to render a true verdict.

*Commonwealth v. Hoffman,* 439 Pa. 348, 355, 266 A.2d 726, 730 (1970), quoting from *Commonwealth v. Meyers,* 290 Pa. 573, 139 A.2d 374 (1927). *See also Commonwealth v. Hamilton,* 460 Pa. 686, 334 A.2d 588 (1975). Furthermore, allegedly prejudicial remarks must be read in the context of the case as a whole, with a particular view to the evidence presented and reasonable inferences drawn therefrom, in order to determine whether they are indeed prejudicial. *See Commonwealth v. Boone,* 286 Pa.Super. 384, 428 A.2d 1382 (1981); *Commonwealth v. Bullock,* 284 Pa.Super. 601, 426 A.2d 657 (1981) (Opinion per Cercone, P. J.).

Taken alone we might be able to say that this remark or that one is not prejudicial, but we must view them together and in the context of the entire case. So read, the picture they present is a bleak one. Given the subtle nature of the issues and of the evidence before the jury, such conduct by the prosecutor must necessarily have had the unavoidable effect of prejudicing them, of placing before them issues which they should not properly have considered, of forming in their minds a fixed bias and hostility such that they could not fairly weigh the circumstances of doubt extenuation present in the case and thus render them incapable of arriving at an intellectually compelled and disinterested verdict. *Cf. Commonwealth v. Hoffman, supra; Commonwealth v. Gilman, supra.* In uttering these statements the prosecutor had crossed the boundary of permissible advocacy and begun to traverse the tundra where the trees of dispassionate perception and disinterested reason find no root. It is this sort of excess in criminal proceedings from which we have sought to protect ourselves. By law and reason, we must reverse this conviction, and grant appellant a new and fairer trial.

Before we arrive at the final disposition of the case we must consider one final assignment of error: whether the Commonwealth violated appellant's rights to a speedy trial, as that term has been interpreted by the Supreme Court in Rule 1100 of the Pennsylvania Rules of Criminal Procedure. Pa.R.Crim.P. 1100. The instant complaint

against appellant was filed on February 2, 1976. Appellant entered a plea of guilty on May 25, 1976, which plea was subsequently withdrawn on June 26, 1976. Appellant's case was called to trial July 27, 1976, a date which fell within the 180 day period required by Rule 1100. During the presentation of the Commonwealth's case in chief the court granted a defense motion for mistrial because of a prejudicial statement made by a Commonwealth witness. On July 30, 1976 the Commonwealth filed a petition to extend the time for trial, also within the 180 day period. A hearing was held on the petition August 16, 1976 at which time the court granted an extension to try appellant until the last day of August 1976. The second trial was held August 26, 1976. Appellant contends that the Commonwealth did not show its due diligence in bringing him to trial, and that his further prosecution should be barred because of the intentional prosecutorial misconduct which allegedly elicited the witness's prejudicial remark and resulted in appellant's motion for mistrial. The record clearly shows otherwise; but for the defense's withdrawal of the guilty plea and subsequent motion for mistrial, which was occasioned by a witness's unprovoked prejudicial statement, there would have been no Rule 1100 problem in this case. Because appellant was timely brought to trial initially there is no problem in remanding this case for new trial.

Judgment of sentence reversed, conviction vacated, and case remanded for a new trial.

WATKINS, Judge, concurring and dissenting:

I agree with that portion of the Majority's opinion that holds that the defendant's Rule 1100 rights were not violated.

I disagree with the Majority's reasoning with respect to the issue of whether the prosecutor's remarks were so prejudicial to the defendant that he was denied a fair and impartial trial. I would hold that the trial court's instructions to the jury cured any impropriety in the Commonwealth's summation. Not every improper remark by a pros-

ecutor warrants a new trial and the trial judge must have reasonable discretion in deciding whether the bounds of propriety have been exceeded. *Commonwealth v. McNeal*, 456 Pa. 394, 319 A.2d 669 (1974). I would hold that the trial court did not abuse its discretion in this case.