462 A.2d 813

COMMONWEALTH of Pennsylvania

v.

James WILLIAMS, Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 27, 1982.

Filed July 8, 1983.

Petition for Allowance of Appeal Denied Oct. 18, 1983.

Thomas L. McGill, Jr., Philadelphia, for appellant.

Jane Cutler Greenspan, Assistant District Attorney, Philadelphia, for Com., appellee.

Before HESTER, WICKERSHAM and POPOVICH, JJ.

HESTER, Judge:

This is an appeal from a judgment of sentence imposed on appellant for his convictions of aggravated assault, possessing an instrument of crime, carrying a firearm in a public street, and recklessly endangering another person. Appellant challenges the legality of his arrest and also asserts that the trial judge erred in denying his motion for a mistrial or cautionary instructions following the prosecutor's closing arguments. After closely scrutinizing appellant's arguments, we conclude that the record is free from error in all respects. Accordingly, we affirm the judgment of sentence.

The facts leading to the prosecution of appellant are as follows. On October 31, 1978, at approximately 2:30 p.m., James Hampton was shot in the head in North Philadelphia. Eye witnesses informed the investigating officers that the perpetrator was an individual known as "Country". One of the detectives, David Kaisinger, knew appellant went by the aforementioned nickname. At approximately 8:10 that evening, an eyewitness was shown an array of photographs which included appellant's picture, and identified appellant as the one who committed the assault.

Detective Edward Gallagher, who conducted the identification procedure, returned to the scene of the shooting at approximately 8:30 p.m. There he was advised by Officer Johnson of a tip by an unidentified informant to the effect that appellant was in a second floor bedroom at 1920 North Napa Street, was armed, and that he was going to leave town that night. Detective Gallagher called for a stake-out team. Upon their arrival, the police immediately proceeded to the Napa Street address where they entered an unlocked door, proceeded to the second floor, and apprehended appellant at 9:15 p.m.[1] Subsequent to his arrest, appellant volunteered a statement to the authorities.

1. Appellant was apprehended with a revolver, three spent rounds, and three live rounds.

After a hearing on November 1, 1979, appellant's motion to suppress both his statement and the weapon seized at the time of his arrest was denied. Following a trial by jury, appellant was convicted of the aforementioned charges and sentenced to ten (10) to twenty (20) years imprisonment.[2] This appeal was thereafter perfected.

The first issue which appellant raises is an assignment of error by the trial judge in denying appellant's application to suppress his statement and physical evidence. Appellant complains that the police officer's entry into the Napa Street residence without a warrant constitutes an unreasonable search and seizure which is repugnant to the Fourth Amendment, and which fails to comport with the tests embodied in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Moreover, appellant contends that the warrantless entry and his arrest by the police could not be justified on the grounds of exigent circumstances.

Appellant relies upon the Pennsylvania Supreme Court decision of *Commonwealth v. Williams*, 483 Pa. 293, 396 A.2d 1177 (1978), *cert. denied*, 446 U.S. 912, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980), which held that an arrest warrant was required to effectuate a valid arrest inside the arrestee's home absent exigent circumstances. Those considerations which have been recognized as exigent circumstances include: 1) the gravity of the offense; 2) a reasonable belief that the suspect is armed; 3) a clear showing of probable cause; 4) a reasonable belief that the suspect is within the premises sought to be entered; 5) a likelihood that the suspect will escape; 6) the time of entry; and 7) whether the entry was peaceful. *Commonwealth v. Williams, supra* 483 Pa. at 298–9, 396 A.2d at 1179, quoting *Dorman v. United States*, 140 U.S.App.D.C. 313, 320, 435 F.2d 385, 392–3 (1970).

Appellant argues, in essence, that the police had neither a warrant nor a reasonable belief that the suspect was within

2. Timely post-trial motions were filed and denied.

the premises or that he would attempt to escape. Rather, the police relied upon information provided to Officer Johnson by an informant with no outward indicia of reliability. Therefore, appellant concludes that the police lacked sufficient exigent circumstances to vitiate the need for a warrant.

■ Appellant's interpretation of the *Williams'* warrant requirement is correct; appellant's argument falters in two regards. First, the *Williams* case is inapplicable to the case at bar. That decision was rendered on November 18, 1978, and held to be prospective only in *Commonwealth v. Miller*, 490 Pa. 457, 417 A.2d 128 (1980). Appellant was arrested on October 31, 1978. Consequently, *Williams* is not dispositive of this issue. Instead, we must look to the state of the law prior to November 18, 1978, to determine if warrantless arrests inside a residence were legal.

■ In *Commonwealth v. Norris*, 498 Pa. 308, 312 n. 1, 446 A.2d 246, 248 n. 1 (1982), the Supreme Court observed:

"*Commonwealth v. Williams*, 483 Pa. 293, 396 A.2d 1177 (1978) *cert. denied*, 446 U.S. 912, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980) which established a warrant requirement for arrests in the home in this Commonwealth has held to apply only to arrests occurring after November 18, 1978, when it was handed down. *Commonwealth v. Miller*, 490 Pa. 457, 417 A.2d 128 (1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 924, 66 L.Ed.2d 842 (1981). *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) announced the same warrant requirement under federal law prospectively. Appellant was arrested May 29, 1976. At that time, the requirement for a warrantless arrest in the home was a showing of probable cause."

The Commonwealth therefore was only required to prove probable cause. See also *Commonwealth v. Eliff*, 300 Pa.Super. 423, 446 A.2d 927 (1982). That is not to say that all pre-*William* entries into homes to effectuate arrests were valid. Such entries prior to the *Williams* case still had to be either preceded by the Fourth Amendment re-

quirement that police "knock and announce" their identity and purpose or excused due to exigent circumstances. However, these exigencies which justify non-compliance with the knock and announce rule are not entirely coextensive with those exigencies which validate a warrantless arrest. See *Commonwealth v. Norris, supra* 498 Pa. at 313 n. 2, 446 A.2d at 248 n. 2. In addition to those exigencies mentioned above, the following circumstances may excuse a lack of knock and announcement: 1) a good faith belief by the officers that they or someone are in peril of bodily harm; 2) a reasonable belief by the officers that the suspect might resist arrest or is attempting to escape; 3) some indication that evidence is being destroyed; and 4) a justified belief that the suspect already knows their purpose so as to render any announcement superfluous. *Id.*, 498 Pa. at 312–314, 446 A.2d at 248–249, and numerous cases cited therein.

In the instant case, the nature of the offense for which appellant was being sought was very grave and, since the assault was committed with a gun, the police were more than reasonable in believing that appellant was armed. The police without question had sufficient probable cause to arrest appellant.[3] As to whether the police had a reasonable belief that the suspect was within the Napa Street residence and was preparing to flee, appellant argues that the Commonwealth failed to prove compliance with the *Aguilar-Spinelli* test. *See Aguilar v. Texas, supra; Spinelli v. United States, supra.* However, appellant misapprehends the purpose of this test. The criteria established by those cases determine the constitutionality of an arrest

---

**3.** Probable cause, an intrinsic element in valid warrantless arrests, has been defined as those facts and circumstances available to the police at the time of the arrest which would justify a reasonably prudent man in believing that the suspect has committed or is committing a crime. *Commonwealth v. Powers,* 484 Pa. 198, 398 A.2d 1013 (1979); *Commonwealth v. Culmer,* 463 Pa. 189, 344 A.2d 487 (1975); *Commonwealth v. Bishop,* 425 Pa. 175, 228 A.2d 661 (1967). Clearly, police in this instance had probable cause to arrest appellant. The victim was shot in the middle of the day and eyewitnesses identified appellant by his nickname and by a photographic array.

based in some way upon information from any unidentified informant. In the case at bar, probable cause for the arrest rested upon the identification of appellant as confirmed by several eyewitnesses. Consequently, the basis for the arrest was in no way dependent upon hearsay information.

Concededly, the police relied upon an informant for the tip as to where appellant was hiding and that he intended to flee. However, all that was required was a *reasonable* belief on their part that the suspect was within the Napa Street address. *Commonwealth v. Williams, supra.* Appellant was already identified as the suspect in this case and it was obvious that police were actively searching for him. Therefore, when someone informed the police as to appellant's whereabouts, it was clearly reasonable for them to act according to that tip.

We also hold that the police were excused from knocking and announcing their identity and purpose. As we stated above, a violation of the knock and announce rule does not *per se* warrant a grant of relief if exigent circumstances justified non-compliance. Herein, the police entertained a reasonable belief that appellant was armed, since the offense had been committed with a firearm a mere six hours earlier and no weapon was found at the scene, and a concomitant belief that they were in peril of bodily harm. *Sabbath v. United States*, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1967). Furthermore, they had received a tip that appellant planned to escape from the vicinity some time that evening. *Commonwealth v. Newman*, 429 Pa. 441, 240 A.2d 795 (1968).

Finally, the duty of the police to knock and announce was obviated by their belief that appellant was aware of their purpose. In *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), the Supreme Court of the United States held that the defendant's furtive conduct in eluding police shortly prior to his arrest served as a sufficient basis for the police officers' belief that he was expecting them. Thus, the officers' failure to knock and announce

their identity and purpose was excused. Similarly, appellant's conduct immediately after the commission of the crime in the case at bar can only lead to the conclusion that he knew the police were actively searching for him. Appellant, after committing an assault in front of eyewitnesses who knew him, left the scene and attempted to escape the police by seeking sanctuary in the Napa Street address. As the police approached this residence, someone opened the door, observed the police, and immediately retreated back into the building. The cumulative effect of these facts upon the police was to create a virtual certainty that appellant knew their purpose and that any such announcement would be "a useless gesture." *Miller v. United States*, 357 U.S. 301, 310, 78 S.Ct. 1190, 1196, 2 L.Ed.2d 1332 (1958).

Although the record is unclear as to whether the door was ajar or closed when the police entered, it is clearly irrelevant in light of our holding that the obligation of the police to comply with the knock and announce rule was vitiated by the above facts. For the foregoing reasons, the entry of the police and their subsequent apprehension of appellant were well within the safeguards embodied in the Fourth Amendment.

■ As we stated previously, appellant's argument that the police conducted an illegal search and seizure falters in two aspects. Regardless of the above analysis that the search was valid, there is yet another ground for rejecting appellant's contention. The *Williams* case concerns a search and seizure conducted in a suspect's own home. Herein, appellant was not in his home; testimony at trial revealed that the owner and occupant at 1920 North Napa Street was Christina Lewis.

Recently, the Supreme Court of the United States had occasion to rule upon the need for police to obtain a search warrant to enter premises belonging to a third party in order to effectuate an arrest. *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). Therein, the Supreme Court recognized that the purpose of such a

requirement is to protect the third party's legitimate expectation of privacy in his home.

In *Commonwealth v. Stanley*, 498 Pa. 326, 446 A.2d 583 (1982), a similar factual situation arose where appellant was arrested inside another's home.[4] Our Supreme Court observed:

> "Fourth Amendment claims involve the accused's 'legitimate expectation of privacy' in the areas searched. See *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Commonwealth v. Wagner*, 486 Pa. 548, 406 A.2d 1026 (1979). If an arrest warrant and 'reason to believe' that a suspect can be found on the premises are sufficient for police to invade a suspect's own home, then these facts are sufficient to invade a third party's premises, where a suspect's expectation of privacy is necessarily less."

*Id.*, 498 Pa. at 333–334, 446 A.2d at 587. The Supreme Court thus held that no more strigent requirement was necessary. We too hold that the police were acting properly in the instant case and that no relief is warranted by appellant's attempts to object to a third party's invasion of privacy.

Appellant's second assignment of error concerns the prosecution's closing argument. He asserts that the prosecutor utilized tactics which were purposely designed to inflame the passions and prejudices of the jury. However, in search of support for this argument, appellant misquotes the assistant district attorney on three different occasions.

■■■ Having viewed the actual transcript of the prosecutor's closing argument in the context of the case as a whole, we find that his summary constituted a "disinterested, impartial and fair assessment of the testimony ... presented." *Commonwealth v. Raffensberger*, 291 Pa.Super. 193,

---

**4.** Therein, the police had obtained an arrest warrant, however, that fact does not impair the precential value of *Stanley* to the case at bar since we have already determined that the police had the requisite probable cause to effectuate an arrest and at that time did not require an arrest warrant.

196, 435 A.2d 864, 865 (1981), quoting *Commonwealth v. Harvell*, 458 Pa. 406, 411, 327 A.2d 27, 30 (1974). The language of the prosecutor in no way served to prejudice the jury so as to form in their minds a fixed bias and hostility toward appellant. *Commonwealth v. Hoffman*, 439 Pa. 348, 355, 266 A.2d 726, 730 (1970). Consequently, appellant's contention has no merit.

Judgment of sentence affirmed.

POPOVICH, J., files a dissenting opinion.

POPOVICH, Judge, dissenting:

The majority holds that a tip from an unidentified informant indicating a criminal suspect's whereabouts is sufficient to allow police officers to enter the home of a third party to effectuate an arrest without first knocking and announcing their presence. Because this holding disregards the Fourth Amendment's guarantee against unreasonable searches and seizures, I must dissent.

In *Commonwealth v. Stanley*, 498 Pa. 326, 446 A.2d 583 (1982), our Supreme Court was faced with the issue of whether a defendant's Fourth Amendment rights are violated when police enter a third party's apartment to effectuate an arrest and, in so doing, seize a revolver belonging to the defendant.

The facts of *Stanley* were stated by the Court as follows:

"On October 1, 1975, while incarcerated following a murder conviction for the shooting death of one Timothy Shinn, appellant escaped from the Philadelphia General Hospital Detention Unit. When police discovered appellant was gone, they broadcast an hourly 'wanted' message over the police radio, informed the State Crime Information Center, and widely disseminated appellant's 'mug shot'. An arrest warrant was issued the next day.

While appellant was at large, Carmen Sperduto observed appellant with Jacqueline Keim. Ms. Keim told Mr. Sperduto that appellant was a fugitive and was staying at her apartment on West Roosevelt Boulevard in

Philadelphia. (Appellant was heard to say that 'he needed a place to hole up ... until things got cooled off.') Mr. Sperduto also observed appellant drop and retrieve a small caliber revolver. On October 3, after seeing appellant's picture in the paper, Mr. Sperduto called the police and stated that he 'might know' appellant's whereabouts.

About an hour later, Mr. Sperduto conducted the police to Ms. Keim's apartment. The police called for reinforcements, but no search warrant was obtained. When reinforcements arrived, an officer knocked and announced 'Police'. Thirty to sixty seconds elapsed with no response. The police then forced open the door and proceeded through the living room and dining room. In a small back bedroom, the police observed what they first thought to be a bundle of clothing beneath a small portable crib. Upon closer examination, the police discerned the figure of a man (appellant) and apprehended the appellant. Simultaneously, the police seized a fully loaded revolver from the top of a small bureau next to the crib, within appellant's reach."

*Stanley, supra,* 498 Pa. at 331, 332, 446 A.2d at 585, 586. In affirming judgment of sentence, this Court held that because the police entered the third party's apartment not to search the premises but to make an arrest, Stanley did not have standing to attack the lawfulness of the entry to arrest him. *Commonwealth v. Stanley,* 265 Pa.Super. 194, 401 A.2d 1166 (1979). The Supreme Court chose not to dispose of the issue on the basis of standing and, instead, ruled that the entry was legal. The high Court held that an arrest warrant and "reason to believe" that the subject was in the third party's home were all that was necessary to enter. The Court also held, however, that absent exigent circumstances, police must announce both their authority and purpose before forcible entry. The Court found that the information supplied by Mr. Sperduto, who led officers to the apartment in which Stanley was hiding, supplied police with sufficient reason to believe that the fugitive was in the apartment. The officers knocked and announced

"Police", but failed to announce their purpose. But, because there was no response for up to sixty seconds, and because the suspect was reported to be armed and dangerous, the Court held that by announcing their identity and waiting, the police did more than was required by the Fourth Amendment and were, therefore, excused from announcing their purpose. *Commonwealth v. Stanley*, 498 Pa. 326, 333, 334, 446 A.2d 583, 587.

Although the police in the instant case were not armed with an arrest warrant, I agree with the opinion of the majority that the eye-witness identification of appellant only 20 minutes prior to receiving a tip as to appellant's whereabouts provided probable cause for the arrest and obviated the need for an arrest warrant. However, the fact that police had probable cause to arrest appellant does not excuse the procedures used to effectuate that arrest. Although the majority is correct in citing *Stanley, supra,* for the proposition that one's expectation of privacy is not as high in a third party's home as it is in one's own home, *Stanley* does not hold that an armed suspect in a third party's home has absolutely no expectation of privacy.

Detective Gallagher's testimony from the suppression hearing describes the events leading up to the arrest. Detective Gallagher learned from another police officer, who did not testify, that an informant had seen appellant in this residence, that he was armed, and that he was going to leave town that evening. (N.T. November 1, 1979, pp. 25, 26). At that point, Detective Gallagher waited for a stakeout team and then proceeded up the street towards the residence. When they were about ten houses away, someone thrust his head out of the door of the residence and then quickly went back inside the house. At least four officers, including Detective Gallagher, walked inside. (N.T. November 1, 1979, pp. 28, 40). Detective Gallagher testified that he did not hear the officers who preceded him through the door knock or announce that they were police. (N.T. November 1, 1979, p. 39).

Of the exigent circumstances listed by the majority in excusing the failure of the police to knock and announce, only one, that appellant was armed, can be attributed to circumstances other than the information obtained from the unidentified informant. Although the record indicates that someone looked out of the door of the residence when the police were ten houses away, the majority's conclusion that this person observed the police before ducking back inside is not supported by the testimony presented at the suppression hearing. (*See* N.T. November 1, 1979, pp. 28, 37). The majority also concludes that appellant engaged in furtive conduct similar to that which existed in *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), where police officers were excused from demanding admittance and explaining their purpose because, in addition to the officers' belief that narcotics on the premises could be quickly and easily destroyed, the defendant had, immediately after purchasing narcotics earlier that evening, eluded police who were following him in a car by making a U-turn in the middle of a block. Here, appellant's furtive conduct consisted only of leaving the scene of the crime and seeking refuge in the Napa Street residence. No evidence of a chase or otherwise eluding police was presented.

In *Commonwealth v. Riccardi,* 220 Pa.Super. 72, 283 A.2d 719 (1971), we stated:

"It is settled in this Commonwealth that the Fourth Amendment prohibition against unreasonable searches and seizures requires that a police officer give notice of his identity and announce his purpose before forcibly entering upon private premises to conduct a search or make an arrest. *Commonwealth v. DeMichel,* 442 Pa. 553, 277 A.2d 159 (1971). 'The purpose of this announcement rule is that " * * * the dignity and privacy protected by the fourth amendment demand a certain propriety on the part of policemen even after they have been authorized to invade an individual's privacy. Regardless of how great the probable cause to believe a man guilty of a crime, *he must be given a reasonable opportunity*

*to surrender his privacy voluntarily."* ' " (Citations omitted) (Emphasis supplied)

*Id.,* 220 Pa.Superior at 74, 283 A.2d at 721.

The majority in the instant case is condoning the unannounced entry of four police officers into a private residence based on the testimony of one police officer that another police officer had received a tip from an unknown informant that appellant could be found at this residence. The hearsay on hearsay testimony of an unidentified informant's tip is, in this writer's mind, clearly inadequate to create the exigent circumstances required before police can make an unannounced entry into a private residence.

The majority finds the record unclear as to whether the door of the Napa Street residence was ajar or closed when the police entered. The lower court, in its findings of fact, found that the police "entered an open or unlocked door" before proceeding. to the second floor where they apprehended appellant. While being cross-examined at the suppression hearing, Detective Gallagher indicated that he was sure the door was unlocked but was not sure if the door was completely shut. However, in referring to the first police officer who entered, Detective Gallagher stated, "I saw him turn the handle and go in." (N.T. November 1, 1979, p. 39). In passing on the federal knock and announce rule in *Sabbath v. United States,* 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968), the Court stated: "An unannounced intrusion into a dwelling ... is no less an unannounced intrusion whether officers break down a door, force open a chain lock on a partially open door, open a locked door by use of a pass key, or ... open a closed but unlocked door." (Footnote omitted) *Id.* at 590, 88 S.Ct. at 1758. In the case *sub judice,* the evidence shows that the police turned the door handle before pushing the door open and going inside. Because there is no evidence to indicate that the door was open, the officer's failure to knock and announce cannot be excused on this point.

The Pennsylvania Supreme Court in *Stanley, supra,* did not announce a rule entitling police to enter anyone's home

unannounced without more than the excuse that they were tipped off by some unknown person that an armed felon was hiding there. *Stanley* excused the police from announcing their purpose after they had been led to the third party's apartment by an identified informant and after they had knocked and announced their presence. The Supreme Court in *Stanley, supra,* stated: "[A]ll Fourth Amendment requirements are tempered by considerations of reasonableness under the circumstances .... The purpose of the 'knock and announce' requirement is to permit peaceful surrender of the premises before forcible intrusion." (Citations omitted). *Id.* 498 Pa. at 334, 446 A.2d at 587. I realize that the Fourth Amendment cannot be interpreted to imperil law enforcement officers. *Id.* However, when "reason to believe" is based on a tip such as the one in this case, I would interpret the United States Constitution as requiring the police to announce their presence from a point of safety rather than allowing them to enter through the front door unannounced.

I, therefore, dissent.